Board of Trustees of Woodstock Academy et al. *v.* Freedom of Information Commission et al.

Cotter, C. J., Bogdanski, Peters, Healey and Parskey, Js.

Argued May 13—decision released July 22, 1980

*Donald W. Strickland,* for the appellants (plaintiffs).

*Constance L. Chambers,* assistant general counsel, with whom, on the brief, was *Mitchell W. Pearlman,* general counsel, for the appellee (named defendant).

*Martha Stone,* with whom was *Donna D. Morris,* for the appellees (defendants Ernest M. St. Jean et al.).

COTTER, C. J. The plaintiffs Woodstock Academy, its board of trustees, and its officers appeal from a judgment of the Court of Common Pleas, sustaining a decision of the defendant freedom of information commission that Woodstock Academy was a "public agency" within the meaning of the Freedom of Information Act (hereafter the FOIA). Since the FOIA subjects only public agencies to its disclosure requirements; General Statutes § 1-19 (a); this case presents, as a matter of first impression, the significant question of what may constitute a "public agency" for purposes of the FOIA.

The defendants Ernest St. Jean, Vernon Fuerst and Robert Peabody, in their private capacities as public taxpayers in the town of Woodstock and as representatives of the Woodstock taxpayers association, filed a complaint with the freedom of information commission after the plaintiffs had failed to comply with the defendants' request for the pres-

ent and past financial operating records of Woodstock Academy. After a series of hearings the commission determined that Woodstock Academy was subject to its jurisdiction because it was a public agency within the meaning of the FOIA and that the information sought by the defendant citizen group constituted public records. The commission then directed the plaintiffs to comply with defendants' request. Upon appeal from these rulings, the trial court affirmed the decision of the commission.

The sole issue raised by the plaintiffs on this appeal is whether the trial court erred in concluding that the defendant freedom of information commission acted legally in determining that Woodstock Academy is a "public agency" within the meaning of General Statutes § 1-18a (a).

I

The trial court's finding, read in the light of the memorandum of decision, reveals the following: Woodstock Academy, which is located in the town of Woodstock, was established by special corporate charter of the Connecticut state legislature in 1802. The charter, as amended by the legislature in 1933, provides that the academy's sole purpose is to operate a school for the inhabitants of the town and the vicinity.[1] Since Woodstock has no public high school of its own, the town's board of education, pursuant to General Statutes § 10-33,[2] desig-

---

[1] The only other two schools in Connecticut which are chartered in such a unique fashion are the Norwich Free Academy and the Gilbert School in Winsted. See General Statutes § 10-261. These three specially chartered educational institutions should not be confused with other private or parochial schools in this state.

[2] "[General Statutes] Sec. 10-33. TUITION IN TOWNS IN WHICH NO HIGH SCHOOL IS MAINTAINED. Any local board of education which does not maintain a high school shall designate a high school

nates, on an annual basis, Woodstock Academy as the facility to provide educational services for the town's secondary school children. Virtually all of the school children of Woodstock who seek a free secondary education attend the academy; pupils from the towns of Pomfret and Eastford are also enrolled in the academy. Consequently, the town of Woodstock, as required by General Statutes § 10-34,[3] annually pays the entire tuition fees of those pupils who reside in the town and attend the academy from funds procured by public taxation. Thus, Woodstock utilizes the statutory scheme developed by the legislature in General Statutes §§ 10-33 and 10-34 to fulfill the state constitutional mandate that a free public education at the secondary school level be provided to all children residing in Connecticut. Conn. Const., art. VIII. See *Stolberg* v. *Caldwell,* 175 Conn. 586, 598–99, 402 A.2d 763.

Woodstock Academy receives 95.32 percent of its operating expenses from tuition payments received from the boards of education of the towns of Woodstock, Pomfret and Eastford; Woodstock alone con-

approved by the state board of education as the school which any child may attend who has completed an elementary school course, and such board of education shall pay the tuition of such child residing with a parent or guardian in such school district and attending such high school."

[3] "[General Statutes] Sec. 10-34. APPROVAL BY STATE BOARD OF INCORPORATED OR ENDOWED HIGH SCHOOL OR ACADEMY. The state board of education may examine any incorporated or endowed high school or academy in this state and, if it appears that such school or academy meets the requirements of the state board of education for the approval of public high schools, said board may approve such school or academy under the provisions of this part, and any town in which a high school is not maintained shall pay the whole of the tuition fees of pupils attending such school or academy, except if it is a school under ecclesiastical control."

tributes three-fourths of the academy's operating costs. A private endowment fund of the academy also makes a contribution toward the annual maintenance of the school. Under the provisions of the special corporate charter, all the property and affairs of the academy are under the management and control of a privately elected board of trustees. The only persons eligible to vote for the election of trustees are individuals, twenty-one years of age or older, who have attended the academy and have completed with credit at least one school year's work.

In addition to the substantial funding it receives from local towns, the academy also avails itself of other benefits provided by the state. The academy is certified by the state department of education as required by General Statutes §§ 10-33 and 10-34, thereby allowing its teachers to apply for retirement credit pursuant to General Statutes § 10-183b (14). Under General Statutes § 10-282, Woodstock Academy is eligible to receive state assistance for its building projects. Pursuant to General Statutes § 10-277 (b), the pupils attending Woodstock Academy from Woodstock can receive free transportation to and from school.

## II

The scope of judicial review of the freedom of information commission's decision that Woodstock Academy is a public agency within the meaning of the FOIA is delineated in General Statutes § 4-183 (g). This court, in reviewing the trial court's decision sustaining the action of the commission, must determine whether the agency acted illegally, arbitrarily or in abuse of its discretion and whether

its decision was supported by the evidence. See *Robinson* v. *Unemployment Security Board of Review,* 181 Conn. 1, 4-5, 434 A.2d 293; *Mystic Marinelife Aquarium, Inc.* v. *Gill,* 175 Conn. 483, 500, 400 A.2d 726.

The Connecticut Freedom of Information Act; Public Acts 1975, No. 75-342; General Statutes §§ 1-15 et seq.; provides, inter alia, for disclosure of "all records maintained or kept on file by any public agency." General Statutes § 1-19 (a). General Statutes § 1-18a (a) defines "public agency" as: "any executive, administrative or legislative office of the state . . . and any state or town agency, any department, institution, bureau, board, commission or official of the state or of any city, town, borough, municipal corporation, school district, regional district or other district or other political subdivision of the state, and also includes any judicial office, official or body but only in respect to its or their administrative functions."

This court has frequently noted that where the language used by the legislature is plain and unambiguous, there is no room for construction by the courts and statutes will be applied as their words direct. E.g., *Muha* v. *United Oil Co.,* 180 Conn. 720, 730, 433 A.2d 1009; *Anderson* v. *Ludgin,* 175 Conn. 545, 552, 400 A.2d 712. From the words employed in § 1-18a (a), it is not at all certain whether a "hybrid governmental/private" entity; *Rocap* v. *Indiek,* 539 F.2d 174, 176 (D.C. Cir.); such as Woodstock Academy, is to be considered a state or town agency or "an institution . . . of the state or of a city, town . . . or other political subdivision." The precise question posed by this case— whether a nominally private corporation which

serves a public function may be considered a public agency for purposes of the FOIA—is one on which § 1-18a (a) sheds no clear light.

Where the words of a statute fail to indicate clearly whether the provision applies in certain circumstances, it must be construed by this court, and such statutory interpretation is undertaken in light of the statute's purpose, its legislative history and the circumstances surrounding its enactment as well as its language. *Board of Education* v. *State Board of Education,* 179 Conn. 694, 700–701 n.3, 427 A.2d 846; *Schwarzschild* v. *Binsse,* 170 Conn. 212, 216, 365 A.2d 1195.

We have recently stated that the "Freedom of Information Act expresses a strong legislative policy in favor of the open conduct of government and free public access to government records." *Wilson* v. *Freedom of Information Commission,* 181 Conn. 324, 328, 435 A.2d 353. At the time of its unanimous passage by the General Assembly, the act was noted for making "sweeping changes" in the existing "right to know" law so as to "mark a new era in Connecticut with respect to opening up the doors of city and state government to the people of Connecticut." 18 S. Proc., Pt. 5, 1975 Sess., p. 2323; 18 H. R. Proc., Pt. 8, 1975 Sess., p. 3907. The general rule under the act is disclosure. *Wilson* v. *Freedom of Information Commission,* supra 329. As Representative Martin B. Burke, who sponsored the bill which was enacted, expressly stated on the floor of the house, the intent of the act "is to make every public record and every public meeting open to the public at all times with certain specified exclusions." 18 H. R. Proc., Pt. 8, 1975 Sess., p. 3907.

The individual defendants contend that, in light of its legislative history and its purpose to provide for expansive disclosure to the public, the Freedom of Information Act's definition of "public agency" should be broadly construed. However, although the FOIA embodies a policy in favor of public access to records of public agencies, it is that access alone that has been construed broadly. See *Wilson v. Freedom of Information Commission,* supra. The fact that the disclosure is of records of a *public agency* is assumed in the legislative history of the FOIA. See, e.g., 18 H. R. Proc., Pt. 8, 1975 Sess., p. 3911.[4] Nonetheless, a policy of liberal access to public records would necessarily be thwarted if "public agencies" were given a narrow construction, and thus the defendants' contention is somewhat persuasive.[5]

On occasion we have held that considerable weight is given to an enforcing agency's construc-

[4] Representative Martin B. Burke stated: " 'The legislature finds and declares that . . . the people do not yield their sovereignty to the agencies which serve them; that the people, in delegating authority, do not give their public servants the right to decide what is good for them to know; and that it is the intent of the law that actions taken by public agencies be taken openly and their deliberations be conducted openly and that the records of all public agencies be open to the public except in those instances where a superior public interest requires confidentiality.' " 18 H. R. Proc., Pt. 8, 1975 Sess., p. 3911.

[5] Conversely, we are not persuaded by the plaintiffs' contention that the legislative history of the FOIA clearly reveals that such institutions as Woodstock Academy do not come within the act. The plaintiffs argue that by omitting a clause specifically referring to nonprofit corporations from the final version of the FOIA; House Bill No. 5087; the legislature evinced an intention not to have the act cover private corporations such as Woodstock Academy.

As we recently stated in *Robinson* v. *Unemployment Security Board of Review,* 181 Conn. 1, 20–21 n.5, 434 A.2d 293, about a similar argument, where a myriad of explanations or inferences are possible, to accept a construction of a statute based on changes made without explanation would be "to indulge in specula-

tion of the statute where the language is ambiguous and the legislative history is not completely enlightening. *Anderson* v. *Ludgin,* 175 Conn. 545, 555–56, 400 A.2d 712; *Corey* v. *Avco-Lycoming Division,* 163 Conn. 309, 326, 307 A.2d 155 (*Loiselle, J.,* concurring), cert. denied, 409 U.S. 1116, 93 S. Ct. 903, 34 L. Ed. 2d 699. The agency's practical construction of the statute, if reasonable, is "high evidence of what the law is." *Anderson* v. *Ludgin,* supra, 556–57; *Wilson* v. *West Haven,* 142 Conn. 646, 657, 116 A.2d 420. Nonetheless, we need not base our disposition of the important question in this appeal solely on the preceding rationales.

tion on the meaning of 'mute intermediate legislative maneuvers.' *Trailmobile Co.* v. *Whirls,* 331 U.S. 40, 61, 67 S. Ct. 982, 91 L. Ed. 1328." See also *Litchfield* v. *Bridgeport,* 103 Conn. 565, 131 A. 560.

Similarly, the plaintiffs' other arguments based on legislative history are unpersuasive. The plaintiffs contend that by specifically expanding the definition of schools in Public Acts 1975, No. 75-609, an act establishing procedures for student disciplinary exclusions, the legislature evinced its awareness that special wording was necessary to extend coverage to institutions like Woodstock Academy. Public Act No. 75-609, however, is completely unrelated in subject matter to the FOIA and it is well established that only statutes in pari materia, because they can be assumed to be spawned by similar concerns and purposes, may be looked to for guidance. *Connecticut Light & Power Co.* v. *Costle,* 179 Conn. 415, 422, 426 A.2d 1324; *Doe* v. *Institute of Living, Inc.,* 175 Conn. 49, 58, 392 A.2d 491. Finally, the plaintiffs' reliance on inferences to be drawn from other later proposed bills is not convincing. See *Robinson* v. *Unemployment Security Board of Review,* supra, 20–21 n.5. Furthermore, we note that the plaintiffs' other arguments, unrelated to the legislative history of the FOIA are equally unavailing. For instance, the plaintiffs' reliance on *Trustees of Dartmouth College* v. *Woodward,* 17 U.S. (4 Wheat.) 518, is misplaced. In *Dartmouth College,* supra, 712, the United States Supreme Court held an act of the New Hampshire legislature unconstitutional because powers or franchises vested in any private corporation or its corporate officers by its charter may not be removed, restrained, or transferred to others without consent of the corporation unless the legislature reserves the power to do so in the charter. Since the FOIA has no impact on corporate structure or powers but only on public access to records and meetings, *Dartmouth College* is inapplicable.

## III

In *Wilson* v. *Freedom of Information Commission,* supra, 333, we noted that it was appropriate to look to the federal FOIA; 5 U.S.C. § 552; for guidance. This is particularly true in the present case because the purposes of the federal act and of our act are virtually identical; see, e.g., *Westinghouse Electric Corporation* v. *Schlesinger,* 542 F.2d 1190 (4th Cir.); and the language of the federal act, even after the definition of agency was greatly enlarged by amendments in 1974; see Pub. L. No. 93-502, § 3; see also 1974 U.S. Code Cong. & Adm. News, pp. 6267–93; is equally unilluminating as to the act's coverage of the federal counterparts to such hybrid public/private entities as Woodstock Academy. Compare 5 U.S.C. §§ 522 (e) and 551 (1) with General Statutes § 1-18a (a). As a result the federal courts have developed what may be termed a "functional equivalent" test to determine whether such institutions are public agencies for purposes of disclosure under the federal disclosure law. E.g., *Rocap* v. *Indiek,* 539 F.2d 174 (D.C. Cir.); *Washington Research Project, Inc.* v. *Department of Health, Education & Welfare,* 504 F.2d 238 (D.C. Cir.), cert. denied, 421 U.S. 963, 95 S. Ct. 1951, 44 L. Ed. 2d 450; *Public Citizen Health Research Group* v. *Department of Health, Education & Welfare,* 449 F. Sup. 937 (D. D.C.); *Ciba-Geigy Corporation* v. *Mathews,* 428 F. Sup. 523 (S.D.N.Y.); *Lombardo* v. *Handler,* 397 F. Sup. 792 (D. D.C.), aff'd without opinion, 546 F.2d 1043 (D.C. Cir.), cert. denied, 431 U.S. 932, 97 S. Ct. 2639, 53 L. Ed. 2d 248. The federal courts have consistently rejected formalistic arguments of the sort advanced by the plaintiff who seeks to make determinative the acad-

emy's nominal status as a private nonstock corporation. As the District of Columbia Circuit Court of Appeals recently stated: "[A]ny general definition [of any agency] can be of only limited utility to a court confronted with one of the myriad organizational arrangements for getting the business of the government done. . . . The unavoidable fact is that each new arrangement must be examined anew and in its own context." *Washington Research Project, Inc.* v. *Department of Health Education & Welfare,* supra, 245–46.

The major and discrete criteria which federal courts have utilized in employing a functional equivalent test are: (1) whether the entity performs a governmental function; (2) the level of government funding; (3) the extent of government involvement or regulation; and (4) whether the entity was created by the government. *Rocap* v. *Indiek,* supra, 180; *Washington Research Project, Inc.* v. *Department of Health, Education & Welfare,* supra, 246–48; *Public Citizen Health Research Group* v. *Department of Health, Education & Welfare,* supra, 941; *Lombardo* v. *Handler,* supra, 802. Cf. *Forsham* v. *Harris,* 445 U.S. 169, 179–80, 100 S. Ct. 978, 63 L. Ed. 2d 293 (federal funding without substantial degree of federal supervision insufficient to make federal grantee fall within federal FOIA).

Since Woodstock Academy performs a basic governmental function in providing public education at a secondary school level, is nearly entirely (over ninety-five percent) publicly financed, has its operations examined and certified by the state board of education so as to be eligible for reimbursement for tuition fees by local towns and for other statutory benefits, and is an entity created by statute for

the sole purpose of maintaining a public school for the benefit of the inhabitants of Woodstock and other towns in the vicinity, it must be considered a public agency for purposes of this state's FOIA. Each of the four factors of functional equivalence is amply in evidence in the circumstances of this case.

Under virtually an identical analysis, the court in *Public Citizen Health Research Group* v. *Department of Health, Education & Welfare,* supra, found the National Capital Medical Foundation, Inc., (hereinafter the NCMF) to be an agency within the meaning of the federal FOIA. The court so found despite the facts that the NCMF provides services to the department of health, education and welfare on a contractual basis, it was not established by federal law but by private parties, its employees are not public employees, it is free to, and in fact does, contract to perform various functions for state and city agencies and for private parties, and there is no daily federal supervision of its activities. The court held that the NCMF was an agency in its capacity as a Professional Standards Review Organization, because in that capacity it "is financed by the United States, it is a creature of statute, it performs an executive [decision-making] function [in the field of health care], and it operates under direct, pervasive, continuous regulatory control . . . ." *Public Citizen Health Research Group* v. *Department of Health, Education & Welfare,* supra, 941.

A case by case application of the factors noted above is best suited to ensure that the general rule of disclosure underlying this state's FOIA is not undermined by nominal appellations which obscure

functional realities. Cf. *Lockwood* v. *Killian*, 172 Conn. 496, 502, 375 A.2d 998. It would be anomalous if Woodstock Academy could avoid the requirements of the FOIA and not disclose its financial records to those persons who fund its operation in light of its extensive involvement with state and town government. On the other hand, the criteria we have utilized should also ensure that a truly private entity would not be subject to disclosures which were unintended by our FOIA.

There is no error.

In this opinion the other judges concurred.