[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I. PROCEDURAL HISTORY
By letter dated December 10, 1993, Ellen Andrews requested the Domestic Violence Services of Greater New Haven, Inc. to provide her with access to copies of its annual report, the budget for the year 1992-93, the proposed budget for the year 1993-94, activities engaged in by Domestic Violence and the identities of Domestic Violence directors and chief administrative personnel. In December of 1993, Domestic Violence Services denied the request and Ms. Andrews filed a complaint with the Freedom of Information Commission by letter dated December 17, 1993. This matter was heard as a contested case on March 31, 1994.
On September 14, 1994, the Freedom of Information Commission issued its final decision in which it found that the plaintiff was a public agency and ordered Domestic Violence Services to henceforth comply with the provisions of the Freedom of Information Act.
FACTS
The Commission found the following facts, which in the opinion of the court are supported by the record before it:
1) The respondent receives annual funding from Federal, state and Local government sources totalling approximately $475,895, or approximately 66% of the respondent's budget.
2) Section 46b-38c(a), Conn. General Statutes, requires that CT Page 5911 the Connecticut judicial system have "family violence response and intervention units" to respond to cases involving family violence. In addition, § 46b-38c(a), Conn. General Statutes, requires that these units be coordinated and governed by formal agreement between the Chief state's Attorney and the Judicial Department.
3) Section 46b-38c(b), Conn. General Statutes, requires that the Family Relations Division of the Connecticut Judicial Branch, in accordance with the agreement between the Chief state's Attorney and the Judicial Department, establish within each geographical area of the Superior Court a local family violence intervention unit.
4) That pursuant to the mandate of the statute, the Family Division entered into a contract with the Connecticut Coalition Against Domestic Violence, Inc., an organization which oversees a statewide network of domestic violence prevention projects in collaboration with the Family Division.
5) Under the terms of the coalition's contract with the Family Division the coalition subcontracts with local domestic violence service providers, which subcontractors provide direct services to victims of family violence crimes in cases referred by the Family Division.
6) The plaintiff in this case is one such provider subcontractor.
7) In such capacity the plaintiff provides services to victims of crimes referred by the court, including victim's advocates who assist victims through the court process with matters such as protective orders, temporary restraining orders, applications for criminal injuries compensation, as well as other needs such as shelter, support groups and crisis counseling.
8) The respondent is a non-profit organization created in 1977 by a group of concerned citizens to address domestic violence issues.
9) The respondent was not created by the government.
The defendant Commission reached three conclusions which the court believes warrant further discussion. Those conclusions are: (1) The respondent performs a government function as authorized and specified in § 36b-38c, Conn. General Statutes, et seq.; (2) The CT Page 5912 respondent is subject to extensive federal, state and local regulation including audits, site visits and interviewing of employees and servicing recipients; and (3) It is concluded that the respondent is subject to substantial government involvement and regulation.
DISCUSSION
The status of Domestic Violence Services of Greater New Haven, Inc. as a public agency must be examined under Conn. General Statute § 1-18a(a) which provides:
 Public agency or agency means any executive, administrative or legislative office of the state or any public subdivision of the state and any state or town agency, any department, institution, bureau, board, commission, authority or official of the state. . . .
That language has been examined and subjected to a "functional equivalent of a public agency" test in Board of Trustees v. Freedomof Information Commission, 181 Conn. 544, 554-555 (1980). In Boardof Trustees, the court held:
 In determining whether an entity is a functional equivalent of a public agency, we consider the following criteria: (1) whether the entity performs a governmental function; (2) the level of government funding; (3) the extent of government involvement or regulation; and (4) whether the entity was created by the government.
The court then disapproved of the trial court's reliance onHallas v. Freedom of Information Commission, an Appellate Court decision, 18 Conn. App. 291 (1989), in which the Appellate Court had concluded that the functional equivalency test required that all four elements be present. Rather, the Supreme Court, inConnecticut Humane Society, held:
 In light of the myriad organizational arrangements that may be confronted under the functional equivalency approach each new arrangement must be examined anew and in its own context. [Citations omitted.] A case by CT Page 5913 case application of the factors noted above is best suited to ensure that the general rule of disclosure underlying this state's FOIA is not undermined by nominal appellations which obscure functional realities. [Citations omitted.] All relevant factors are to be considered cumulatively, with no single factor being essential or conclusive."
Connecticut Human Society, 760, 761.
In footnote number 3 of the Connecticut Human Society opinion, the Supreme Court explains the derivation of the functional equivalency test and the relevance of federal case law to this determination even though the Connecticut Freedom of Information Act is not modelled on the federal act. The footnote reads as follows:
 We derived the functional equivalency test from the federal case law interpreting the federal freedom of information act. [Citations omitted]. Although our freedom of information act does not derive from any model act or the federal freedom of information act, other similar acts because they are in pari materia are interpretively helpful, especially in understanding the necessary accommodations of the competing interest involved.
The "governmental function" referred to in the functional equivalent test has been held to be a function traditionally performed by the government. See Board of Trustees,181 Conn. at 554, providing education to children is a traditional government function. The plaintiff, Domestic Violence, argues that the care of battered women is not a traditional government function. Neither side cites authority which analyzes the process, if any, by which functions which were once purely private, charitable or religious may evolve into government functions. It is historically true that the care of battered women, at least in an organized way, may not have been a traditional governmental function. Nevertheless, this court is convinced that the government's interest in the protection of battered women and the providing of services has evolved to the point where the function may be regarded as a traditional governmental function, notwithstanding an apparent lack of historical antecedents. CT Page 5914
With respect to the first part of the four-prong test, the court does not see the issue as whether the care of battered women is a traditional governmental function. The United States Supreme Court has held in Forsham v. Harris, 445 U.S. 169, 17 (1980), that contracting with the government does not make an organization a public agency subject to freedom of information laws. In addition, Domestic Violence Services is not contracting with the government to provide the function of servicing battered women. Rather, it is contracting with the coalition which in turn is contracting with the government. Additionally, unlike other quasi-public agencies found to be functionally equivalent, Domestic Violence Services has no power to govern or regulate any individual or entity. See Boardof Trustees, 181 Conn. at 554, where the court held that the plaintiff was performing a government function when it acted as a public school system for the Connecticut towns of Woodstock, Pomfret and Eastford. In the instance case, in the absence of its contract, the plaintiff would have no obligation to perform any government function.
It appears to the court that an analysis of the performance of traditional government functions by entities who contract to perform services is a slippery slope with no precise answers. The Supreme Court in Connecticut Humane Society has mandated a case by case analysis. That court has recognized the relevancy of federal cases in examining the question. The court notes that the American Red Cross has been found to be a non-public agency. Irwin v. RedCross, 640 F.2d 1050 (1980). The National Academy of Science and its Committee on Motor Vehicle Emissions was a non-governmental agency. Lombardo v. Handler, 397 F. Sup. 792 (1975). The Connecticut Humane Society was found not to be a public agency.Connecticut Humane Society v. Freedom of Information, 218 Conn. 757
(1991). Bond counsel paid by the government was found not to be a public agency by the Appellate Court. Hallas v. Freedom ofInformation Commission, 18 Conn. App. 291 (1989). This court recognizes that at least to some extent the Hallas decision has been disapproved in Connecticut Humane Society.
The two leading cases in which an agency has been found to be a public agency under the functional equivalency test are Cos CobVolunteer Fire Department v. Freedom of Information Commission,212 Conn. 100 (1989), concerning the non-operational requirements of a volunteer fire department, and Board of Trustees v. Freedom ofInformation Commission, 181 Conn. 544 (1980), where Woodstock Academy, which provided education essentially as a public school for secondary school children in the Towns of Woodstock, Pomfret CT Page 5915 and Eastford, was found to be a public agency. Unlike Domestic Violence Services, both the Cos Cob Volunteer Fire Department and Woodstock Academy existed almost exclusively for the purpose of performing a traditional government function. In the case before the court the evidence is clear that only about 25% of the budget of the plaintiff goes to performing the contractual victim's services. The plaintiff has no obligation other than its contract obligation to perform those services and it almost certainly would continue to exist if its contract to perform the specific victim's advocate services were discontinued.
It is the court's holding that, while acknowledging that the plaintiff contracts with another private agency to perform a government function and while the court is willing to regard that relatively new function as a traditional government function, the court does not agree as a matter of law with finding 16 of the Freedom of Information Commission decision in which the Commission concluded that the respondent performs a government function. To the extent that the respondent performs a government function, it does so only with about 25% of its effort and only as a result of its contract. Its performance of a government function would appear to be little different under the facts before the court than a construction contractor who is building a sewer line as 25% of its workload.
The second prong of the functional equivalent test concerns the level of government funding. Although there is some factual dispute, the court recognizes that this is an administrative appeal. Applying the standard of review in an administrative appeal, the court finds that the record before the agency was sufficient to justify its conclusion that approximately 66% of the respondent's budget comes from funding by the federal, state and local governments.
The third prong of the functional equivalency test concerns the extent of government involvement or regulation. The Freedom of Information Commission, in finding 17, found that the respondent is "subject to extensive federal, state and local regulations including audits, site visits and interviewing of employees and service recipients." While the record justifies the finding that there are audits, site visits and interviews, the court does not believe that the record justifies the finding that the respondent is subject to "extensive federal, state and local regulation". The United States Supreme Court has held that in the absence of "extensive, detailed and virtually day to day supervision" an CT Page 5916 entity can not be considered subject to sufficient government regulation and control to qualify it as a "public agency" for purposes of freedom of information. Forsham v. Harris,445 U.S. 169, 180 (1980). Similarly our Appellate Court in Hallas v.Freedom of Information, 18 Conn. App. 291, 296 (1989), speaks of an entity which is required to "operate under direct, pervasive and continuous regulatory control". The district court for the District of Columbia has held in Public Citizens Health ResearchGroup v. Department of Health, Education and Welfare, 668 F.2d 537,544 (D.D.C. 1981), that controls imposed on health groups to assure that federal funds are expended properly and that contracts and uniform procedures are followed, "do not impose the detailed and day to day supervision which would make the [health groups] government agencies."
While the agency makes what is essentially a legal conclusion in finding "extensive federal, state and local regulation", there is no clear statement of facts in the record which justifies this finding. There is no finding concerning the nature or frequency of the audits or site visits. Further, it would appear that the audits and site visits have no affect on the plaintiff's daily operations. In the day to day performance of its services Domestic Violence Services is self-directed. Record, Koorejian Affidavit, Para. 8. The "site visits" are limited in frequency (approximately once a year) and are conducted by the state in conjunction with the funding which the plaintiff receives from the state. The use of the word "audit" appears to be misleading. There is no evidence that any one from the state actually reviews and verifies the books of the plaintiff. Rather, the plaintiff submits financial records to the State Department of Social Services to justify the funds which it receives.
The court concludes that while the plaintiff is subject to some regulation because of its public funding, that regulation is largely required either because of its public funding or its contractual obligations, and does not amount to the type of extensive regulation of day to day operation necessary to meet the third prong of the functional equivalency test. This is particularly true when that prong is viewed in light of the federal cases interpreting it.
The fourth prong of the functional equivalency test concerns whether or not the entity in question was created by the government. It is conceded in the instant case that the plaintiff is a private charitable agency and was not created by the CT Page 5917 government.
In conclusion, the court finds: (1) Domestic Violence Services of Greater New Haven, Inc. performs some functions which could be regarded as government functions; but those functions, which make up about 25% of its mission, are performed as a result of a subcontract with a government contractor. Under these circumstances the agency cannot be said to perform traditional government functions; (2) There is a significant level of government funding available to the Domestic Violence Services of Greater New Haven, Inc.; (3) The extent of government involvement or regulation falls short of that required to meet the third prong of the Connecticut Humane Society test. To the extent that there is regulation, it is the result of contractual obligations and not the result of the performance of traditional government functions.
Finally, there is no dispute that this entity was not created by the government.
Applying the case by case determination standard imposed upon this court by the Supreme Court in Connecticut Humane Society, this court finds that the only part of the four-prong test which may be satisfied by Domestic Violence Services of Greater New Haven, Inc., is the second prong relating to government funding. While the court recognizes that all prongs need not be satisfied, the court is convinced that Domestic Violence Services of Greater New Haven, Inc. is essentially a private charitable organization which contracts to perform certain government functions and, like other charities which contract to perform government functions, receives government funds. However, on balance, it appears that the agency clearly fails to come within the spirit of the functional equivalency test set out in Connecticut Humane Society.
In addition, while the court is mindful of the need for public agencies to be subject to public scrutiny, the court is equally mindful of the right of private agencies, which provide valuable public services, to be free of public scrutiny if they fail to meet the functional equivalency test. It appears to the court that there could be a legitimate fear that a truly private charitable agency would have difficulty functioning and that its contributors and volunteers may wish an anonymity not possible if freedom of information requirements are imposed.
The court finds that the decision appealed from was in excess CT Page 5918 of the statutory authority of the agency and was clearly erroneous in view of the reliable probative and substantial evidence on the record as a whole. The court sustains the appeal and reverses the decision of the Commission.
The court notes that the appeal requests that the court award the plaintiff costs and attorney's fees. Section 4-183(1) provides "No costs shall be taxed against the state except as provided in section 4-184a. Section 4-184a(b) provides in pertinent part:
 . . . the court may, in its discretion, award to the prevailing party, other than the agency, reasonable fees and expenses in addition to other costs if the court determines that the action of the agency was undertaken without any substantial justification.
In view of the case by case analysis clearly mandated by theConnecticut Humane Society decision and recognizing the public duty of the Freedom of Information Commission to ensure public access to public and quasi-public agency records, the court is not willing to determine that the agency's action was taken "without any substantial justification". Accordingly, the court declines to award the plaintiff costs and attorney's fees.
THE COURT
BY: KEVIN E. BOOTH, JUDGE