[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum of Decision
I. Nature of Proceedings
This is an administrative appeal from a decision of the Freedom of Information Commission brought pursuant to Conn. Gen. Stat. §§ 1-21 i(d) and 4-183 (b). The plaintiff seeks review of the decision of the Commission in its contested case docket number FIC 94-121, American Federation of State, County andMunicipal Employees Connecticut Council 4 AFL-CIO ("AFSCME") v.Connecticut Conference of Municipalities ("CCM") based upon the assignment of error alleged in plaintiff's appeal "Petition" dated January 27, 1995.
II. Facts
On February 16, 1994, the plaintiff made a written request for documents and information from CCM relating to its business meetings and membership. By reply letter dated March 16, 1994, CCM informed the plaintiff that it is not a public agency as defined in the Freedom of Information Act ("FOIC") and, therefore, not subject to its provisions.
There is nothing in the present record before the court that would indicate that CCM ever voluntarily surrendered the requested information while maintaining that it was not subject to the act. Accordingly, this court finds that the present appeal is not mooted by compliance.
The matter was heard as a contested case on October 20, 1994, before Commissioner Deane C. Avery. Commissioner Avery issued a proposed finding and order which was considered and adopted by the full commission at its meeting of December 28, 1994.
At that time, the Commission applied the functional equivalency test adopted by the Connecticut Supreme Court inBoard of Trustees v. FOIC, 181 Conn. 544, 554 (1980) and concluded that CCM was not a public agency within the meaning of Conn. Gen. Stat. § 1-18a(a). The Commission dismissed the complaint. From that dismissal, the plaintiff has appealed to this court.
III. Scope of Review
Conn. Gen. Stat. § 1-21i(d) provides that appeals from decisions of the FOIC are brought pursuant to the Uniform CT Page 6185 Administrative Procedure Act ("UAPA") and, specifically, pursuant to Conn. Gen. Stat. § 4-183.
The section is question provides, in pertinent part, that:
 "The court shall not substitute its judgment for that of the agency as to the weight of evidence on questions of fact. . . ."
Additionally, Conn. Gen. Stat. § 4-183 (i) provides that the appeal is confined to the administrative record unless there are alleged irregularities in the procedure not disclosed by the record.
IV. Discussion
If CCM is subject to the Connecticut Freedom of Information Act it is because it is a public agency when subjected to the four prong test adopted by the Connecticut Supreme Court in Boardof Trustees v. Freedom of Information Commission, 181 Conn. 544,554-555 (1980).
In Board of Trustees, our Supreme Court, relying upon earlier federal precedent held:
 "The major and discrete criteria which Federal Courts have utilized in employing a functional equivalent test are: (1) whether the entity performs a governmental function; (2) the level of government funding; (3) the extent of government involvement or regulations; and (4) whether the entity was created by the government . . ." [Citations omitted;] Board of Trustees, at 554.
Although our Appellate Court originally held that the functional equivalent test required all four elements, Hallas v.FOIC, 18 Conn. App. 291 (1989), this holding was rejected by the Supreme Court in Connecticut Humane Society v. FOIC, 218 Conn. 757,760-761 (1991), when the court held:
 "In light of the myriad of organizational arrangements that may be confronted under the functional equivalency approach, each new arrangement must be examined anew and in its own context. [Citations omitted.] A case-by-case application of the factors noted above is best suited to ensure that the general rule of disclosure underlying this state's FOIA is not undermined by nominal appellations which obscure functional realities. [Citations CT Page 6186 omitted.] All relevant factors are to be considered cumulatively, with no single factor being essential or conclusive."
(a) Governmental Function
A "governmental function," as that phrase is used by the courts, is a task which is traditionally performed by the government as opposed to the private sector. Board of Trustees,181 Conn. at 554.
After considering the evidence in the record, the Commission concluded that CCM does not perform a governmental function. It wrote:
 "It is found that although [CCM] provides services to local government officials and employees, for a fee, in the form of educational and informational programs and materials designed to educate and enhance the professional capabilities of public officials and employees, its programs and activities do not replace tasks or functions traditionally performed by government." (T. 26 at ¶ 7.)
The court finds that the record before the Commission fully supported its conclusion. CCM's principal function is not providing municipal services, but rather providing services to municipalities. In this sense, it is no different than many other private contractors. Since CCM does not perform any functions traditionally considered governmental, it fails to satisfy the first prong of the functional equivalency test.
(b) Receipt of Public Funding
The second prong of the functional equivalency test considers whether the agency at issue receives significant levels of public funding. The Commission concluded:
 "that while public funds are undoubtedly allocated from the budgets of [CCM's] members to pay fees to [CCM], [CCM] does not receive a direct allotment of public funds at this time." (T. 26 at 2 ¶¶ 9 and 14.)
The distinction between income from a contract with the government and public funding of an appropriation nature was explored in Lombardo v. Handler, 397 F. Sup. 792, 794-95
(1975) affirmed without op., 546 F.2d 1043 (D.C. Cir., (1976), CT Page 6187cert. denied, 431 U.S. 932 (1977). In that case, the Federal Court found that the National Academy of Sciences was not a public agency. The court held:
 "The Academy does not receive . . . government appropriations. Rather, its relations with the government are of a contractual nature. . . . The fact that the Academy receives a great deal of federal money each year through government contracts, may show that the Academy depends upon the government for most of its business but does not indicate that the Academy has `agency' status."
This court concludes that because CCM does not receive any direct allotment of government funds, it does not satisfy the functional equivalency test "public funding" prong. The second prong of the functional equivalency test is, therefore, not satisfied in the present case.
(c) Governmental Regulation
The third prong of the functional equivalency test concerns the extent to which the alleged "public agency" is regulated or controlled by a governmental body of which it is claimed to be an agency. Connecticut Humane Society, supra at 260.
In regard to this prong of the test, the Commission made the following findings:
 "15. It is found that [CCM] is self-directed and its employees are not government employees.
 16. It is found that the respondent operates from privately owned and rented facilities in New Haven and Hartford, and the rental expenses are not paid or subsidized by any government agency, but rather as part of the respondents operating budget. . . .
 18. It is further found that the complainant has failed to allege or prove facts establishing that the respondent is regulated . . . by government, or involved with the government beyond the fact that the respondent's members are primarily municipalities."
(T. 26 at 2 ¶¶ 15-16, 18.)
The United States Supreme Court has made it clear that CT Page 6188 extensive governmental regulation is required to satisfy the third prong of the test. In Forsham v. Harris, 445 U.S. 169, 180
(1980), the court held:
 "[In the absence of] extensive, detailed and virtually day to day supervision [an entity cannot be considered subject to sufficient regulation to qualify as a public agency] . . ."
CCM is a voluntary association. It is self-directed and its employees are not government employees. No government agency has control over the operations of CCM. Like the Connecticut HumaneSociety, CCM is not required to perform any particular function. When CCM does perform, its performance is not subject to review by any government or government agency. CCM could close its operations at any time without the consent or approval of any government or government agency. CCM is not subject to the type of control envisioned by the United States Supreme Court inForsham.
This court finds that the "government regulation" and control prong of the functional equivalent test is not satisfied. The third prong is not satisfied.
(d) Creation of Government
The Commission found:
 "17. It is found that the respondent was founded in 1966 by mayors and first selectmen of various towns, and while initially membership was personal to the mayors or selectmen, the organization has evolved into a trade association with Connecticut's cities and towns as its primary members.
 18. It is further found that the complainant has failed to allege or prove facts establishing that the respondent is . . . created by government."
(T. 26 at 3 ¶¶ 17-18.)
The formation of CCM was not the result of any law or legislation. CCM does not have its genesis in legislation and was not formed by a public agency or as a public agency. CCM was not created by the government. The forth prong of the functional equivalent test is not satisfied. CT Page 6189
V. Conclusion
It appears to the court that CCM is in reality a trade association for mayors and municipalities of Connecticut. To open the doings of that association to the plaintiff, American Federation of State, County and Municipal Employees, Council 4, AFL-CIO would, at a minimum, severely restrict and, at a maximum, render impossible the functioning of the organization.
The court concludes that CCM does not fall within any prong of the functional equivalency test, and is not subject to the freedom of information law of the state of Connecticut.
The decision of the Commission is affirmed. The appeal is dismissed.
Booth, J.