*Whitaker v. Vermont Info. Tech. Leaders, Inc.*, No. 781-12-15 Wncv (Teachout, J., Oct. 28, 2016).
[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Washington Unit** | **Docket No. 781-12-15 Wncv** |

**STEVEN WHITAKER**
    **Plaintiff**

    **v.**

**VERMONT INFORMATION TECHNOLOGY LEADERS, INC.**
    **Defendant**

### DECISION
### Cross-Motions for Summary Judgment

Plaintiff Steven Whitaker requested that Defendant Vermont Information Technology Leaders, Inc. (VITL) produce certain records in its possession for his examination pursuant to Vermont's Access to Public Records Act, 1 V.S.A. §§ 315–320. VITL has represented that it was willing to produce many of the records sought, and that many of them are available to Mr. Whitaker elsewhere, but it resists any suggestion that it is required to do so by the Act because it claims that it is a private, nonprofit organization to which the Act does not apply. Mr. Whitaker contends that the Act applies because VITL is the "functional equivalent" of a public agency. The controversy crystallized on that point, this lawsuit ensued, and the parties have filed cross-motions for summary judgment addressing that preliminary issue alone. Oral argument on the motions was heard on October 18, 2016. No issue about the mechanics of applying the Act to VITL, if it applies, is before the court at this time, nor is any issue about whether any particular records are exempt or subject to access.

*The Public Records Act and Functional Equivalence*

The Act generally allows any member of the public access to any public records, subject to exceptions, in the possession of a public agency. The Act generally is interpreted in favor of access and any agency that resists public access has the burden of proving that it did so properly. 1 V.S.A. § 315(a). "Officers of government are trustees and servants of the people and it is in the public interest to enable any person to review and criticize their decisions even though such examination may cause inconvenience or embarrassment." *Id.* The fundamental principle of accountability of persons engaged in the work of government has been a part of the Vermont Constitution from the beginning: "[A]ll power being originally inherent in, and consequently, derived from, the people; therefore, all officers of government, whether legislative or executive, are their trustees and servants, and at all times accountable to them." Vt. Const. of 1777, ch. 1, § V.[1]

---

[1] Currently, Article 6 of Chapter I of the Vermont Constitution provides: "That all power being originally inherent in and co[n]sequently derived from the people, therefore, all officers of government, whether legislative or executive, are their trustees and servants; and at all times, in a legal way, accountable to them." Article 13 of Chapter I of the Vermont Constitution highlights the right of the people to comment "concerning the transactions of government."

Most lawsuits arising out of public records requests address the timing or completeness of an agency's response, the scope or application of a claimed exemption, and similar matters. This case is different. VITL, incorporated as a private, nonprofit organization, asserts that it is not a public agency at all and thus it has no obligations under the Act.

The Act applies to "public agencies" and "public records." A "public agency" is "any agency, board, department, commission, committee, branch, instrumentality, or authority of the State or . . . any political subdivision of the State." 1 V.S.A. § 317(a)(2). A "public record" is "any written or recorded information, regardless of physical form or characteristics, which is produced or acquired in the course of public agency business." *Id*. § 317(b).

In a prior unrelated case, this court concluded that a private corporation was a "public agency" for purposes of the Act because it was the "functional equivalent" of a public agency. *Prison Legal News v. Corrections Corporation of America*, No. 332-5-13 Wncv, 2014 WL 2565746 (Vt. Super. Ct. Jan. 10, 2014), available at https://www.vermontjudiciary.org/20112015%20Tcdecisioncvl/2014-5-30-31.pdf. The predominant factors used to evaluate functional equivalence are: "(1) whether the entity performs a governmental function; (2) the level of government funding; (3) the extent of government involvement or regulation; and (4) whether the entity was created by the government." *Id*. at \*4 (quoting *Board of Trustees of Woodstock Academy v. Freedom of Information Commission*, 436 A.2d 266, 270–71 (Conn. 1980)). "The cornerstone of this analysis, of course, is whether and to what extent the entity performs a governmental or public function, for we intend by our holding to ensure that a governmental agency cannot, intentionally or unintentionally, avoid its disclosure obligations under the Act by contractually delegating its responsibilities to a private entity." *Id*. at \*5 (quoting *Memphis Publishing Co. v. Cherokee Children & Family Services*, 87 S.W.3d 67, 79 (Tenn. 2002)).

The *Prison Legal News* decision was not appealed to the Vermont Supreme Court and thus did not generate a binding determination of the status of the functional equivalency test in Vermont. Here, neither party argues that *Prison Legal News* was wrongly decided. Instead, both apply that analysis in support of their competing positions. Though neither asks the court to reject *Prison Legal News* or adopt some different approach to this matter, the court recognizes that *Prison Legal News* can have persuasive authority at most and that the determination of the law that applies in this case is the court's responsibility. See *Vermont Human Rights Comm'n v. State, Dep't of Corr.*, 2015 VT 138, ¶ 17 n.3 ("We note that although on appeal the parties agree to [which law applies], it is for this Court, not the parties to determine which law applies to the conduct at issue in this case.").

The trial court's interpretation of the Act and adoption of the functional equivalency test in *Prison Legal News* is highly persuasive and this court adopts both for purposes of this case. The analysis in *Prison Legal News* is detailed and thorough and the parties are familiar with it. There is no need to restate the analysis here. The focus is on applying the test and the factors for consideration under that test to the undisputed facts of this case.[2]

---

[2] Both parties submitted short statements of fact supported by expansive exhibits. Neither has taken the position that there is any material fact in dispute that should require a trial. The fundamental dispute in this case is the legal one, whether VITL should be subject to the Act, not any factual ones about what VITL is or what it does.

*Vermont Information Technology Leaders*

VITL was incorporated as a private 501(c)(3) nonprofit in 2005 and conceived as a public–private partnership. Its participants were various healthcare-related constituencies and representatives of state government with expertise in healthcare information technology matters and related policymaking. In briefing, VITL suggests that it is a mere provider of services to the state as an independent contractor or grant-recipient. However, it appears to be a hybrid entity that always has been incorporated into statute, woven into government-sponsored healthcare reform, and fully dependent on state funding.

VITL first appeared in statute in 2005. It was charged with developing Vermont's first statewide Health Information Technology Plan,

> that includes the implementation of an integrated electronic health information infrastructure for the sharing of electronic health information among health care facilities, health care professionals, public and private payers, and patients. The plan shall include standards and protocols designed to promote patient education, patient privacy, physician best practices, electronic connectivity to health care data, and, overall, a more efficient and less costly means of delivering quality health care in Vermont.

2005, No. 71, § 277 (Appendix).[3] In the same legislation, the legislature (1) made VITL subject to certain conflict of interest policies; (2) required that the commissioner of information and innovation, the director of the office of Vermont health access, and commissioner of the department of banking, insurance, securities, and health care administration be members; (3) required VITL to initiate a specific pilot program; (4) established various reporting requirements; and (5) required it to post the minutes of its meetings on a public website. The commissioner of the department of banking, insurance, securities, and health care administration was *required* to contract with VITL to do all of this.

In 2006, coordinated responsibility for health care reform, explicitly including VITL's work, came to rest with the secretary of administration. 2005, No. 191 (Adj. Sess.), § 3. The same year, the legislature made a substantial appropriation to VITL to support, in part, its coordination with "'the Vermont blueprint for health chronic care initiative' and other health care related statewide information technology projects." 2005, No. 215 (Adj. Sess.), § 87; see also *id*. § 295 (describing the commission on health care reform's support for VITL); *id*. § 330 (making the commissioner of health an additional member of VITL and requiring health information technology funded by the state to "comply with data standards for interoperability adopted by VITL and the state health information technology plan"). That legislation also

---

[3] Many of VITL's appearances in legislation are uncodified or were codified in sections that have been recodified and amended numerous times. In codified sections, VITL currently appears principally at 18 V.S.A. §§ 9351–9352, 9375 in Part 9 of Title 18 (Health) in Chapters entitled "Unified Health Care System" and "Green Mountain Care Board," and at 32 V.S.A. § 10301 in Title 32 (Taxation and Finance) in a Chapter entitled "Health IT-Fund." What follows is a selection of VITL's appearances in legislation since inception. It is not comprehensive.

provided, "If at any time VITL no longer demonstrates the ability to deliver the work described in 18 V.S.A. § 9417, the state shall have the right to assume ownership of all licenses, intellectual property, and work product of VITL developed for the state pursuant to section 9417 or otherwise." *id.* § 87.[4]

In 2007, the legislature made clear the importance of moving toward electronic health records and VITL's role in doing so in Vermont. See 2007, No. 70, § 24a. It provided that "VITL shall be designated in the [Vermont health information technology plan] to operate the exclusive statewide health information exchange network for this state, notwithstanding the provisions . . . requiring the recommendation of the commissioner and the approval of the general assembly before the plan can take effect." *Id.* § 24. It also allowed expedited certificates of need for health information technology projects that comply with the preliminary health information technology plan "issued by" VITL. 2007, No. 27 § 12(a)(1).

In 2008, in an Act entitled "An Act Relating to Making Appropriations for the Support of Government," the legislature changed the language requiring the state to "contract" with VITL to "shall enter into a grant agreement with." 2007, No. 192 (Adj. Sess.), § 6.008. This may have reflected a view that VITL was more of an instrumentality of the state than an independent contractor. See *id.* § 7.003 (reflecting the legislature's acceptance of VITL's health information plan and VITL's role in implementing it, and providing some history); *id.* § 7.004 (establishing the Health IT Fund to support "the development of programs and initiatives sponsored by VITL" and others not specifically stated, including "financial support for VITL to build and operate the health information exchange network").

In 2009, the legislature required the secretary of administration to update the health information technology plan annually, required consultation with VITL in doing so, and allowed that the secretary "may enter into a contract or grant agreement with VITL or other entities to update some or all of the plan." 2009, No. 61, § 1. It also provided that the "general assembly and the governor shall each appoint one representative to the Vermont Information Technology Leaders, Inc. (VITL) board of directors." *Id.* It authorized VITL "to certify the meaningful use of health information technology and electronic health records by health care providers licensed in Vermont" as required by federal law, *id.*, although VITL asserts that it has never actually done this. Also of note, it exempted VITL from certain certificate of need requirements. *Id.*

In 2010, the legislature provided that the "secretary of administration . . . shall enter into procurement grant agreements with VITL" with regard to its exclusive operation of the Vermont health information exchange network. 2009, No. 67 (Adj. Sess.), § 108.

In 2013, the legislature required VITL to "establish criteria for creating or maintaining connectivity to the State's health information exchange network. VITL shall provide the criteria annually by March 1 to the Green Mountain Care Board." 2013, No. 79, § 34a.

---

[4] At the hearing on the motions, VITL questioned the legal effect of this provision. For present purposes, the significance of the provision is not its legal effect, but simply that the legislature enacted it, signifying legislative understanding of the role and rights of government in the work to be performed by VITL.

4

In 2015, among other things, the legislature directed the Green Mountain Care Board to:

> Annually review the budget and all activities of VITL and approve the budget, consistent with available funds, and the core activities associated with public funding, which shall include establishing the interconnectivity of electronic medical records held by health care professionals and the storage, management, and exchange of data received from such health care professionals, for the purpose of improving the quality of and efficiently providing health care to Vermonters.

2015, No. 54, § 7. The legislature also adopted provisions essentially determining the full composition of VITL's board of directors. *Id*. § 9. The current version of those provisions appears at 18 V.S.A. § 9352(a):

> (a)(1) Governance. The Vermont Information Technology Leaders, Inc. (VITL) Board of Directors shall consist of no fewer than nine nor more than 14 members. The term of each member shall be two years, except that of the members first appointed, approximately one-half shall serve a term of one year and approximately one-half shall serve a term of two years, and members shall continue to hold office until their successors have been duly appointed. The Board of Directors shall comprise the following:
>> (A) one member of the General Assembly, appointed jointly by the Speaker of the House and the President Pro Tempore of the Senate, who shall be entitled to the same per diem compensation and expense reimbursement pursuant to 2 V.S.A. § 406 as provided for attendance at sessions of the General Assembly;
>> (B) one individual appointed by the Governor;
>> (C) one representative of the business community;
>> (D) one representative of health care consumers;
>> (E) one representative of Vermont hospitals;
>> (F) one representative of Vermont physicians;
>> (G) one practicing clinician licensed to practice medicine in Vermont;
>> (H) one representative of a health insurer licensed to do business in Vermont;
>> (I) the President of VITL, who shall be an ex officio, nonvoting member;
>> (J) two individuals familiar with health information technology, at least one of whom shall be the chief technology officer for a health care provider; and
>> (K) two at-large members.
> (2) Except for the members appointed pursuant to subdivisions (1)(A) and (B) of this subsection, whenever a vacancy on the Board occurs, the members of the Board of Directors then serving shall appoint a new member who shall meet the same criteria as the member he or she replaces.

VITL has statutory authority to seek funding from sources other than the state, but there is no indication in the record that it has ever received significant funding from anywhere other than the state (or federal funds flowing through the state).

*Analysis*

Neither party has identified case law from other states, nor has the court found any, applying the functional equivalence analysis in circumstances that are analogous to this case. A review of that case law reveals occasions where private entities were found to be public agencies, occasions where they were found not to be, and several occasions where judges of appellate courts were split on the matter. In this case, for the reasons set forth below, the court is persuaded that, applying the functional equivalence analysis, VITL is the functional equivalent of a public agency for purposes of Vermont's Public Records Act.

The principal factors to be considered in determining whether or not functional equivalence exists are "(1) whether the entity performs a governmental function; (2) the level of government funding; (3) the extent of government involvement or regulation; and (4) whether the entity was created by the government."

Among these, the last three are easily satisfied here. VITL is and always has been nearly exclusively funded by or through the state. The legislature has always controlled substantial aspects of what VITL does, the composition of its board, some of its internal policies, how it interfaces with the state, and how the state will interface with it. VITL was not created exclusively by the state, but the appearance is that it likely never would have been created without the state's involvement, and continuing state involvement appears to be vital to its ongoing existence and functioning. VITL's suggestions that it is simply doing what any other private contractor could do if it so chose are especially unpersuasive when examined in detail and historical context. These factors all weigh heavily in favor of functional equivalence.

Still, the most important factor is the first, public or governmental function. VITL argues that it is not involved in a governmental function, or at least not a traditional and exclusive governmental function. It contrasts its role with that of Corrections Corporation of America, which, by imprisoning Vermonters for the Vermont Department of Corrections, clearly was performing a traditional and necessarily exclusive governmental function.

While healthcare is not an *exclusive* governmental function, governmental assumption of responsibility and involvement in healthcare and healthcare funding has grown in recent years at both the federal and state level. VITL clearly is an important component of governmental healthcare "reform" in Vermont. Although it was created as a nongovernmental entity, its role now is largely to fulfill a governmental function of facilitating certain aspects of healthcare reform taken on by the government: it develops and maintains the infrastructure "highway system" designed to support governmental health care reform efforts. The fact that it does so may serve the private interests of its private stakeholders as well, but that does not diminish the public function it serves. It simply is not an ordinary contractor or consultant, neither of which would be subject to constantly evolving legislation controlling what it does, ensuring its role vis-à-vis health care reform in Vermont, and establishing (or at least asserting) state "ownership of all licenses, intellectual property, and work product of VITL."

6

Whatever the virtues of VITL being organized as a private nonprofit may be, this is exactly the sort of situation in which the Public Records Act should apply to a private entity so that the consequences of governmental decision-making can be subject to public scrutiny. Holding otherwise would have the anomalous effect described in *Prison Legal News*, 2014 WL 2565746, at *3, of allowing the government's use of a private entity to, intentionally or not, avoid its obligation to be transparent to the public. Such an effect would be in conflict with the purpose and policy of the Act.

While there has always been a provision in effect requiring VITL to post certain materials on a publicly available website, that is insufficient for purposes of the governmental transparency required by the Public Records Act, as it largely allows VITL to determine what it presents to the public.

At the hearing on the motions, VITL argued that one of the reasons that it was created as a private entity was to insulate it from the reach of the Act due to the private nature of the medical records to which it has access. However, many governmental agencies possess large quantities of confidential or other nonpublic materials, and the Act has numerous exemptions to protect them. Moreover, if the legislature actually considered this issue when VITL was created or anytime thereafter, and wanted VITL (whether as a private entity or otherwise) to be exempt from the Act, it merely had to say so. It never has, including during the nearly full year that this case has been pending.

The court concludes that VITL is the functional equivalent of a public agency for purposes of the Public Records Act and thus is subject to it.

ORDER

For the foregoing reasons, on the issue of applicability of the Public Records Act:

1. VITL's motion for summary judgment (Motion 3, filed February 3, 2016) is *denied.*
2. Mr. Whitaker's motion for summary judgment (Motion 5, filed April 1, 2016) is *granted*.

The Clerk will set a scheduling conference to take place in the near future to address next steps.

Dated at Montpelier, Vermont this 27th day of October 2016.

_____
Mary Miles Teachout
Superior Judge

7

Sec. 277.  18 V.S.A. § 9417 is added to read:

§ 9417.  HEALTH INFORMATION TECHNOLOGY

(a)  The commissioner shall facilitate the development of a statewide health information technology plan that includes the implementation of an integrated electronic health information infrastructure for the sharing of electronic health information among health care facilities, health care professionals, public and private payers, and patients.  The plan shall include standards and protocols designed to promote patient education, patient privacy, physician best practices, electronic connectivity to health care data, and, overall, a more efficient and less costly means of delivering quality health care in Vermont.

(b)  The health information technology plan shall:

(1)  support the effective, efficient, statewide use of electronic health information in patient care, health care policymaking, clinical research, health care financing, and continuous quality improvements;

(2)  educate the general public and health care professionals about the value of an electronic health infrastructure for improving patient care;

(3)  promote the use of national standards for the development of an interoperable system, which shall include provisions relating to security, privacy, data content, structures and format, vocabulary, and transmission protocols;

(4)  propose strategic investments in equipment and other infrastructure elements that will facilitate the ongoing development of a statewide infrastructure; and

(5)  recommend funding mechanisms for the ongoing development and maintenance costs of a statewide health information system.

(c)  The commissioner shall contract with the Vermont information technology leaders (VITL), a broad-based health information technology advisory group that includes providers, payers, employers, patients, health care purchasers, information technology vendors, and other business leaders, to develop the health information technology plan, including applicable standards, protocols, and pilot programs.  In carrying out their responsibilities under this section, members of VITL shall be subject to conflict of interest policies established by the commissioner in the certificate of need regulations to ensure that deliberations and decisions are fair and equitable.

(d)  The following persons shall be members of VITL:

(1)  the commissioner of information and innovation, who shall advise the group on technology best practices and the state's information technology policies and procedures, including the need for a functionality assessment and feasibility study related to establishing an electronic health information infrastructure under this section;

(2)  the director of the office of Vermont health access or his or her designee; and

(3)  the commissioner or his or her designee.

(e)  On or before July 1, 2006, VITL shall initiate a pilot program involving at least two hospitals using existing sources of electronic health information to establish electronic data sharing for clinical decision support, pursuant to priorities and criteria established in conjunction with the health information technology advisory group.  Objectives of the pilot program may include:

(1)  supporting patient care and improving quality of care;

(2)  enhancing productivity of health care professionals and reducing administrative costs of health care delivery and financing;

(3)  determining whether and how best to expand the pilot program on a statewide basis;

(4)  implementing strategies for future developments in health care technology, policy, management, governance, and finance; and

(5)  ensuring patient data confidentiality at all times.

(f)  The standards and protocols developed by VITL shall be no less stringent than the "Standards for Privacy of Individually Identifiable Health Information" established under the Health Insurance Portability and Accountability Act of 1996 and contained in 45 C.F.R., Parts 160 and 164, and any subsequent amendments.  In addition, the standards and protocols shall ensure that there are clear prohibitions against the out-of-state release of individually identifiable health information for purposes unrelated to treatment, payment, and health care operations, and that such information shall under no circumstances be used for marketing purposes.  The standards and protocols shall require that access to individually identifiable health information is secure and traceable by an electronic audit trail.

(g)  On or before January 1, 2007, VITL shall submit to the commissioner, the commissioner of information and innovation, the director of the office of Vermont health access, and the general assembly a health information technology plan for establishing a statewide, integrated electronic health information infrastructure in Vermont, including specific steps for achieving the goals and objectives of this section.  The plan shall include also recommendations for self sustainable funding for the ongoing development, maintenance, and replacement of the health information technology system.  Upon recommendation by the commissioner and approval by the general assembly, the plan shall serve as the framework within which certificate of need applications for information technology are reviewed under section 9440b of this title by

10

the commissioner.

(h)  Beginning January 1, 2006, and annually thereafter, VITL shall file a report with the commissioner, the commissioner of information and innovation, the director of the office of Vermont health access, and the general assembly.  The report shall include an assessment of progress in implementing the provisions of this section, recommendations for additional funding and legislation required, and an analysis of the costs, benefits, and effectiveness of the pilot program authorized under subsection (e) of this section, including, to the extent these can be measured, reductions in tests needed to determine patient medications, improved patient outcomes, or reductions in administrative or other costs achieved as a result of the pilot.  In addition, VITL shall file quarterly progress reports with the health access oversight committee and shall publish minutes of VITL meetings and any other relevant information on a public website.

(i)  VITL is authorized to seek matching funds to assist with carrying out the purposes of this section.  In addition, it may accept any and all donations, gifts, and grants of money, equipment, supplies, materials, and services from the federal or any local government, or any agency thereof, and from any person, firm, or corporation for any of its purposes and functions under this section and may receive and use the same subject to the terms, conditions, and regulations governing such donations, gifts, and grants.

(j)  The commissioner, in consultation with VITL, may seek any waivers of federal law, rule, or regulation that might assist with implementation of this section.