# DOMESTIC VIOLENCE SERVICES OF GREATER NEW HAVEN, INC. *v.* FREEDOM OF INFORMATION COMMISSION ET AL.
## (AC 14892)

Lavery, Landau and Daly, Js.

Argued September 23, 1997—officially released January 20, 1998

*Victor R. Perpetua*, with whom, on the brief, were *Mitchell W. Pearlman*, general counsel, and *Barbara Housen* and *Joan Andrews*, commission counsel, for the appellant (named defendant).

*Patricia E. Reilly*, for the appellee (plaintiff).

*Opinion*

LAVERY, J. The dispositive issue in this appeal[1] is whether the plaintiff, Domestic Violence Services of Greater New Haven, Inc., is a public agency within the meaning of General Statutes § 1-18a (a). Because we hold that the trial court used the proper standard of review and that the plaintiff is not a public agency, we affirm the judgment.

The following facts are relevant to this appeal. In December, 1993, the complainant, Ellen Andrews, requested in writing that the plaintiff provide her with certain corporate documents, including its annual report, budget and bylaws pursuant to the Freedom of Information Act (act), General Statutes § 1-7 et seq. The plaintiff's executive director initially refused to produce the documents requested. Thereafter, the complainant filed a complaint with the Freedom of Information Commission asking it to order the plaintiff to disclose the records requested. The commission scheduled a hearing on the complaint for March 3, 1994. On February 28, 1994, the plaintiff voluntarily gave the complainant the requested documents with an explanation that the disclosure was not an admission that the plaintiff is a public agency, as defined by the act, but an effort to avoid litigation.

Despite the voluntary disclosure, the commission went forward with the contested hearing on March 31,

---

[1] This court previously dismissed the case as moot and the defendant appealed. The case returns to this court on remand from the Supreme Court. *Domestic Violence Services of Greater New Haven, Inc.* v. *Freedom of Information Commission*, 240 Conn. 1, 688 A.2d 314 (1997).

1994.[2] Following the hearing, the commission found that the plaintiff was a public agency pursuant to § 1-18a (a) and, although the documents had been disclosed to the complainant prior to the hearing, the documents had not been disclosed *promptly*.[3] The commission then ordered the plaintiff to comply strictly with the provisions of the act in the future. The plaintiff appealed to the trial court pursuant to General Statutes §§ 1-21i (d)[4] and 4-183[5] claiming that the commission's finding that the plaintiff was a public agency was incorrect as a matter of law and clearly erroneous in view of the reliable, probative and substantial evidence on the whole record.

Following a thorough analysis of the facts and law, the trial court concluded that the plaintiff was not a public agency within the meaning of the statute. The trial court sustained the plaintiff's appeal, finding that the commission's decision was in excess of the statutory authority of the agency and was clearly erroneous in view of the reliable probative and substantial evidence on the record as a whole. See General Statutes § 4-183 (j). The commission appealed to this court from the trial court's judgment pursuant to § 1-21i (d).[6]

---

[2] Following the voluntary disclosure, the commission changed the hearing date from March 3 to March 31, 1994.

[3] General Statutes § 1-15 provides in relevant part: "(a) Any person applying in writing shall receive, *promptly upon request*, a plain or certified copy of any public record. . . ." (Emphasis added.)

[4] General Statutes § 1-21i (d) provides in relevant part: "Any party aggrieved by the decision of said commission may appeal therefrom, in accordance with the provisions of section 4-183 . . . ."

[5] General Statutes § 4-183 (a) provides: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section. The filing of a petition for reconsideration is not a prerequisite to the filing of such an appeal."

[6] General Statutes § 1-21i (d) provides in relevant part: "The commission shall have standing to defend, prosecute or otherwise participate in any appeal of any of its decisions and to take an appeal from any judicial decision overturning or modifying a decision of the commission. If aggrievement is

On appeal to this court, the commission claims that the trial court (1) failed to follow the applicable scope of judicial review when it sustained the plaintiff's administrative appeal and (2) concluded improperly that the plaintiff is not the functional equivalent of a public agency for the purposes of the act. We disagree.

I

The commission first claims that the trial court did not follow the applicable scope of judicial review in sustaining the plaintiff's appeal. The commission argues that the trial court improperly substituted its judgment for that of the commission with respect to certain evidence.[7] We do not agree.

"We review the issues raised by the [commission] in accordance with the limited scope of judicial review afforded by the [Uniform Administrative Procedure Act]." *Dolgner* v. *Alander*, 237 Conn. 272, 280, 676 A.2d 865 (1996). The scope of permissible review is governed by § 4-183 (j)[8] and is very restricted. See *Cos Cob Volun-*

---

a jurisdictional prerequisite to the commission taking any such appeal, the commission shall be deemed to be aggrieved. . . ."

[7] The commission also claims that the Superior Court improperly substituted its judgment with respect to the weight to be given evidence concerning which of the plaintiff's activities constitute governmental functions and incorrectly concluded that the plaintiff does not have contracts with the government.

[8] General Statutes § 4-183 (j) provides: "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. If the court finds such prejudice, it shall sustain the appeal and, if appropriate, may render a judgment under subsection (k) of this section or remand the case for further proceedings. For purposes of this section, a remand is a final judgment."

teer *Fire Co. No. 1, Inc.* v. *Freedom of Information Commission*, 212 Conn. 100, 104, 561 A.2d 429 (1989); *New Haven* v. *Freedom of Information Commission*, 205 Conn. 767, 774, 535 A.2d 1297 (1988). " 'Neither this court nor the trial court may retry the case or substitute its own judgment for that of the defendant.' *C & H Enterprises, Inc.* v. *Commissioner of Motor Vehicles*, 176 Conn. 11, 12, 404 A.2d 864 (1978); *DiBenedetto* v. *Commissioner of Motor Vehicles*, 168 Conn. 587, 589, 362 A.2d 840 (1975); see General Statutes § 4-183(g)." *New Haven* v. *Freedom of Information Commission*, supra, 773. " 'The conclusion reached by the defendant must be upheld if it is legally supported by the evidence. . . . The credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency, and, if there is evidence printed in the appendices to the briefs which reasonably supports the decision of the commissioner, we cannot disturb the conclusion reached by him. *Hart Twin Volvo Corporation* v. *Commissioner of Motor Vehicles*, 165 Conn. 42, 49, 327 A.2d 588 [(1973)].' See *Paul Bailey's, Inc.* v. *Kozlowski*, 167 Conn. 493, 496–97, 356 A.2d 114 [(1975)]." *Lawrence* v. *Kozlowski*, 171 Conn. 705, 708, 372 A.2d 110 (1976), cert. denied, 431 U.S. 969, 97 S. Ct. 2930, 53 L. Ed. 2d 1066 (1977). "Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion." *Dolgner* v. *Alander*, supra, 280–81.

"The interpretation of statutes presents a question of law. . . . Although the factual and discretionary determinations of administrative agencies are to be given considerable weight by the courts . . . it is for the courts, and not for administrative agencies, to expound and apply governing principles of law." (Citations omitted; internal quotation marks omitted.) *Connecticut Humane Society* v. *Freedom of Information*

*Commission,* 218 Conn. 757, 761–62, 591 A.2d 395 (1991). Because the commission's determination of whether the plaintiff is a public agency required an interpretation of § 1-18a (a), that determination was a matter of law. See id.

The trial court determined that the commission's decision with respect to the agency status of the plaintiff "was in excess of the statutory authority of the agency and was clearly erroneous in view of the reliable, probative and substantial evidence on the whole record." See General Statutes § 4-183 (j). On the basis of our review of the record and the trial court's memorandum of decision, we hold that the trial court did not violate the judicial standard of review. The facts on which the trial court relied in reaching its decision are consistent with the facts found by the commission. The trial court applied the standards of "the functional equivalent of a public agency" test set forth in *Board of Trustees* v. *Freedom of Information Commission,* 181 Conn. 544, 549, 436 A.2d 266 (1980), to the facts found by the commission.

II

The second issue raised by the commission on appeal is that the trial court improperly concluded that the plaintiff is not the functional equivalent of a public agency for purposes of the act. We disagree.

The following facts are necessary for our analysis. The plaintiff was not created by government; rather, it was established in 1977 as a not-for-profit corporation by a group of private citizens concerned about domestic violence. It provides services and temporary shelter to the victims of domestic violence and their families. The plaintiff receives approximately 66 percent of its funding from federal, state and local governments.

General Statutes § 46b-38c (a) requires the judicial branch to maintain family violence response and intervention units (units) to respond to cases involving family violence. These units are coordinated and governed by a formal agreement (agreement) between the chief state's attorney and the judicial branch. Section 46b-38c (b) requires the family relations division of the trial court to establish, in accordance with the agreement, a local victims' advocacy unit within each geographical area of the trial court.

At the time in question, the family relations division had entered into a contract with the Connecticut Coalition Against Domestic Violence, Inc. (coalition), an organization that oversees a statewide network of domestic violence prevention projects. Under the terms of the contract, the coalition subcontracts with local domestic violence service providers to provide direct service to victims of family violence referred to them by the family relations division. The plaintiff is one of the local domestic violence service subcontractors. In this capacity, the plaintiff provides advocacy services to victims of domestic violence referred to it by the court. In addition to the services provided pursuant to the subcontract, the plaintiff provides other services to victims of domestic violence such as shelter, support groups and crisis counseling.

The act requires the disclosure of "all records maintained or kept on file by any public agency." General Statutes § 1-19. The term "public agency" is defined in § 1-18a (a): " 'Public agency' or 'agency' means any executive, administrative or legislative office of the state or any political subdivision of the state and any state or town agency, any department, institution, bureau, board, commission, authority or official of the state or of any city, town, borough, municipal corporation, school district, regional district or other district or other political subdivision of the state, including any

committee of, or created by, any such office, subdivision, agency, department, institution, bureau, board, commission, authority or official, and also includes any judicial office, official or body or committee thereof but only in respect to its or their administrative functions." We look to the federal Freedom of Information Act; 5 U.S.C. § 552; for guidance when interpreting our state statute. See *Wilson* v. *Freedom of Information Commission,* 181 Conn. 324, 333, 435 A.2d 353 (1980).

Our Supreme Court was first asked to construe the term "public agency" in *Board of Trustees* v. *Freedom of Information Commission,* supra, 181 Conn. 544. In *Board of Trustees,* the court adopted the "functional equivalent" test of the federal courts to determine whether an entity is a public agency. Id., 553. Federal courts have consistently rejected formalistic arguments such as that of the commission in this appeal. See id. " '[A]ny general definition [of any agency] can be of only limited utility to a court confronted with one of the myriad organizational arrangements for getting the business of the government done. . . . The unavoidable fact is that each new arrangement must be examined anew and in its own context.' *Washington Research Project, Inc.* v. *Dept. of Health, Education & Welfare,* [504 F.2d 238, 245–46 (D.C. Cir. 1974), cert. denied 421 U.S. 963, 95 S. Ct. 1951, 44 L. Ed. 2d 450 (1975)]. The major and discrete criteria which federal courts have utilized in employing a functional equivalent test are: (1) whether the entity performs a governmental function; (2) the level of government funding; (3) the extent of government involvement or regulation; and (4) whether the entity was created by the government." *Board of Trustees* v. *Freedom of Information Commission,* supra, 554.

## A

The first prong of the functional equivalent test is whether the plaintiff performs a governmental function.

The trial court found that the government's providing services to victims of domestic violence is a recent phenomena with no historical antecedent, but concluded that the government's interest in domestic violence and in providing services for victims of such violence has evolved into a governmental function. We agree.

Traditionally, state and local governments have provided fire prevention, police protection, sanitation, public health, and parks and recreation "in discharging their dual functions of administering the public law and furnishing public services." *National League of Cities* v. *Usery*, 426 U.S. 833, 851, 96 S. Ct. 2465, 49 L. Ed. 2d 245 (1976), overruled on other grounds, *Garcia* v. *San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 105 S. Ct. 1005, 83 L. Ed. 2d 1016 (1985); see also *Cos Cob Volunteer Fire Co. No. 1* v. *Freedom of Information Commission*, supra, 212 Conn. 105–106 (nonoperational activities of volunteer fire department traditional governmental function); *Board of Trustees* v. *Freedom of Information Commission*, supra, 181 Conn. 554 (providing public education is basic governmental function).

The passage of General Statutes §§ 46b-38a through 46b-38g demonstrates the intent of the legislature to make the prevention and treatment of family violence a governmental function. Section 46b-38c (f) directs local family violence intervention units to enter into contracts with private victim service providers, such as the plaintiff, for the provision of victim advocacy services pursuant to the contract. The plaintiff, however, is not required to perform the advocacy services authorized by § 46b-38c in the absence of such a contract with a unit. See *Connecticut Humane Society* v. *Freedom of Information Commission*, supra, 218 Conn. 764. Performing a government service pursuant to contract does not make an entity a public agency

subject to the act. See *Forsham* v. *Califano*, 587 F.2d 1128, 1138 (D.C. Cir. 1978), aff'd, 445 U.S. 169, 100 S. Ct. 977, 63 L. Ed. 2d 293 (1980). The key to determining whether an entity is a government agency or merely a contractor with the government "is whether the government is really involved in the core of the program." Id.

Courts have held that entities that are the functional equivalent of a public agency have the power to govern or to regulate or to make decisions. See *Washington Research Project, Inc.* v. *Dept. of Health, Education & Welfare*, supra, 504 F.2d 248; *Board of Trustees* v. *Freedom of Information Commission*, supra, 181 Conn. 555. The plaintiff here has no power to govern, to regulate or to make decisions affecting government; it provides advocacy services to the victims of domestic violence pursuant only to its contractual obligation.

We agree with the trial court that to the extent that the plaintiff provides advocacy services for victims of domestic violence it does so by subcontract with another nonprofit corporation, that the plaintiff provides services other than victim advocacy, that the plaintiff has no obligation to perform those services except for the contract, and that the plaintiff has no decision-making role in the state's family service violence prevention and response programs, nor can it govern or regulate such programs.

B

As to the second prong of the test, the commission found and the trial court agreed that the plaintiff receives substantial funds from government at the local, state and federal levels. The amount of money an entity receives from government, however, is not solely determinative of whether the entity is the functional equivalent of government. See *United States* v. *Orleans*, 425 U.S. 807, 96 S. Ct. 1971, 48 L. Ed. 2d 390 (1976). The amount of government money the plaintiff receives

reflects the amount of business it does with government. See *Lombardo* v. *Handler*, 397 F. Sup. 792, 796 (D.D.C. 1975), aff'd, 546 F.2d 1043 (D.C. Cir. 1976), cert. denied, 431 U.S. 932, 97 S. Ct. 2639, 53 L. Ed. 2d 248 (1977). Although the plaintiff receives a significant amount of funding from various government sources, the funds are consideration for providing certain services to victims of family violence as set forth in grants and contracts. Therefore, the second prong is not met.

## C

The commission argues that because the advocates employed by the plaintiff are required to meet state certification and confidentiality requirements[9] the plaintiff is governmentally controlled. We disagree.

The degree of government control and involvement necessary for an entity to be a public agency was

[9] The applicable law is General Statutes § 52-146k (2) and (3), which provide: "(2) 'Battered women's counselor' means any person engaged in a battered women's center (A) who has undergone a minimum of twenty hours of training which shall include, but not be limited to, the dynamics of battering, crisis intervention, communication skills, working with diverse populations, an overview of the state criminal justice system and information about state and community resources for battered women, (B) who is certified as a counselor by the battered women's center which provided such training, (C) who is under the control of a direct service supervisor of a battered women's center, and (D) whose primary purpose is the rendering of advice, counsel and assistance to, and the advocacy of the cause of, battered women.

"(3) 'Confidential communication' means information transmitted between a victim of a battering or a sexual assault and a battered women's counselor or sexual assault counselor in the course of that relationship and in confidence by a means which, so far as the victim is aware, does not disclose the information to a third person other than any person who is present to further the interests of the victim in the consultation or any person to whom disclosure is reasonably necessary for the transmission of the information or for the accomplishment of the purposes for which such counselor is consulted, and includes all information received by, and any advice, report or working paper given or made by, such counselor in the course of the relationship with the victim."

addressed in *Hallas* v. *Freedom of Information Commission,* 18 Conn. App. 291, 557 A.2d 568, cert. denied, 212 Conn. 804, 561 A.2d 945 (1989). In *Hallas,* the plaintiff sought, pursuant to the act, the records of a law firm serving as bond counsel for a municipality. The *Hallas* plaintiff claimed that the firm was a public agency because bond counsel are subject to certain professional standards and statutory requirements. In that case, we determined that the purpose of bond counsel is to provide expert and objective legal opinions for the benefit of prospective investors. Id., 296. Despite the fact that bond counsel must meet certain professional standards, we held that those standards are not evidence of government's "direct, pervasive or continuous regulatory control." Id. Therefore, the law firm was not the functional equivalent of a public agency.

We begin our analysis by looking at the functions the plaintiff is empowered to perform. See *Washington Research Project, Inc.* v. *Dept. of Health, Education & Welfare,* supra, 504 F.2d 238. The advocates' certification and confidentiality requirements are functionally similar to those required of lawyers acting as bond counsel. The advocates have expertise in helping the victims of family violence and function without day-to-day control by the state or other government agencies when working with victims referred by the court. Advocates have no decision-making authority. See id. Therefore, the professional standards and government regulations that the advocates are required to follow do not make the plaintiff the functional equivalent of government.

Finally, the commission argues that because the state may audit the plaintiff's budget and interview its staff and clients, that activity constitutes government regulation. This argument, too, falls short of the mark. The purpose of such government activity is to evaluate, not to control, the plaintiff's daily activity. See *United States*

v. *Orleans*, supra, 425 U.S. 817–18. "[A] critical element in distinguishing [an agency] from either a contractor . . . or a grantee . . . was the federal government's 'control [of] the detailed physical performance.' " *Forsham* v. *Califano*, supra, 587 F.2d 1135. Because government does not have day-to-day involvement in the ongoing activities of the plaintiff, the third prong of the functional equivalent test is not met.

### D

The parties agree that the plaintiff was not created by government and, thus, the fourth prong of the test is not met.

Balancing the four factors of the functional equivalent test, we hold that, in light of the reliable, probative and substantial evidence on the record as a whole and as a matter of law, the trial court properly concluded that the plaintiff is not a public agency.

The judgment is affirmed.

In this opinion the other judges concurred.