[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff appeals from a decision of the Freedom of Information Commission requiring it to grant access to certain documents relating to its finances. The central issue here presented is whether or not the plaintiff is a public agency within the meaning of Connecticut General Statutes § 1-200
(1)[1] (formerly § 1-18a).
The facts as found by the FOIC hearing officer and supported by substantial evidence are as follows: The plaintiff was created as a non-profit 501(c) corporation in 1983. Its origin was the result of a study group of Meriden citizens and organizations, CT Page 3810 composed of clergy, social service agencies, labor unions, community groups and private businesses recommending to the Meriden community action agency (MCAA) that a nonprofit community-based economic development corporation be established. MCAA was itself created by the Meriden City Council "as the agency responsible for the conduct and administration in the City of Meriden of community action programs pursuant to the Federal Economic Opportunity Act of 1964 and the Human Resource Development programs pursuant to the State Community Development Act of 1967." In another docket before the FOIC, the MCAA was found to be a public agency. On the recommendation of the study group, the MCAA board of directors directed its staff to form the plaintiff organization. All members of plaintiff's board of directors were initially appointed by MCAA board of directors. The articles of incorporation of the plaintiff organization provide four of its seven directors were to be appointed by MCAA, and decisions were to be made by the plaintiff by majority vote of those members present, provided at least two MCAA designees were present. Plaintiff's articles of incorporation stated its purposes as follows: "encouraging the process of community based economic development and minority, poor or disadvantaged communities . . . expand opportunities for low income minority and disadvantaged individuals to enter into, own, manage, operate or be employed in business enterprises, . . . promote and enhance the vitality and health of existing neighborhoods. . . ." The articles further provide, "The focus of the corporation will be on energy conservation, construction and housing rehabilitation, training and the creation of employment."
Plaintiff experienced four distinct phases of activity during the course of its existence: (a) 1983-1985 when the plaintiff operated actively; (b) 1986-1993 when plaintiff was relatively inactive; (c) 1993-1996 when plaintiff substantially engaged in a lead abatement program financed by a $380,000 grant by the U.S. Department of Health and Human Services and in an insulation program of Wrap-Up/Seal-Up under contract with Northeast Utilities; and (d) the present when plaintiff again is virtually inactive. During its active periods plaintiff was also the successful bidder for a number of other contracts involving de-leading of public schools, rehabilitating houses for low income people, and job training for Department of Labor.
The executive director of MCAA serves without compensation as the executive officer and fiduciary agent of the plaintiff. The plaintiff's financial records are maintained by the staff of MCAA CT Page 3811 and kept on file with the MCAA office. The plaintiff has its own project manager who actually directs the work of de-leading, weatherizing, and rehabilitation activities of the organization.
Throughout its existence plaintiff received income from the public and private contracts it performed and public grants from various sources for the programs it undertook. Only in 1994 did the plaintiff's state and federal grants exceed 30% of all of its revenues.
The hearing officer correctly identified the legal principles to be applied in this case. He cited Board of Trusties v. Freedomof Information Commission, 181 Conn. 544 (1980) which noted that any general definition of what constituted a public agency (within the meaning of § 1-200 (1)) could be of only limited utility to a court confronted with a myriad of organizational arrangements for getting government business done and each new arrangement had to be examined anew in its own context. The court adopted the "functional equivalent" test first enunciated in federal cases. That test employed the following four criteria: (1) whether the entity performs a governmental function; (2) the level of government funding; (3) the extent of government involvement or regulation; and (4) whether the entity was created by the government.
The hearing officer further recognized that in ConnecticutHumane Society v. Freedom of Information Commission,218 Conn. 757, 761 (1991) the Supreme Court held that all four factors were not necessary for a finding of functional equivalence, but rather "all relevant factors are to be considered cumulatively, with no single factor being essential or conclusive." The hearing officer further quoted the Appellate Court in Domestic Violence Servicesof Greater New Haven, Inc. v. Freedom of Information Commission,47 Conn. App. 466, 475 (1998) as follows:
 The key to determining whether a entity is a government agency or merely a contractor with the government is whether the government is really involved in the core of the program . . . [the exercise of] direct, persuasive or continuous regulatory control . . . [and] government's control of the detailed physical performance. . . ."
Applying the above factors in the manner indicated above, the hearing officer determined that the level of government funding criterion had not been met but all the other factors had been CT Page 3812 met, and, accordingly, concluded that the plaintiff is the functional equivalent of a public agency within the meaning of § 1-200 (1). He further concluded that the plaintiff violated the provisions of § 1-210 (formerly § 1-19)when it declined to permit the requested records to be disclosed and ordered that those records be disclosed forthwith.
Since the commission's decision requires the plaintiff to provide copies of all the requested documents, the court finds that plaintiff is aggrieved within the meaning of Connecticut General Statutes § 4-183 (a), New England Rehabilitation Hospitalof Hartford. Inc. v. CHHC, 226 Conn. 105, 120 (1993).
The court reviews the issues raised by the plaintiff in accordance with the limited scope of judicial review afforded by the Uniform Administrative Procedure Act, Connecticut General Statutes § 4-183 et seq. Dolgner v. Alander, 237 Conn. 272, 280
(1996). The court may not retry the case or substitute its own judgment for that of the defendant. DiBenedetto v. Commissionerof Motor Vehicles, 168 Conn. 587, 589 (1975). The conclusion reached by the FOIC must be upheld if it is legally supported by the evidence. The credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency and if there is evidence which reasonably supports the decision of the commissioner, the court will not disturb the conclusion reached by him. Hart Twin VolvoCorporation v. Commissioner of Motor Vehicles, 165 Conn. 42, 49
(1973).
In this case the interpretation of § 1-200 (1) presents a question of law. As stated in Domestic Violence Services ofGreater New Haven, Inc v. FOIC, 47 Conn. App. 466. 470 (1998), "`Although the factual and discretionary determinations of administative agencies are to be given considerable weight by the courts, . . . it is for the courts and not for administrative agencies to expound and apply governing principles of law.' (Citations omitted) Because the commission's determination of whether the plaintiff is a public agency required an interpretation of § 1-18a (a) [now § 1-200 (1)], that determination was a matter of law."
In this case the hearing officer has properly identified the factor to be considered in determining whether an organization is the functional equivalent of a government agency within the meaning of § 1-200 (1). This court must determine whether or not CT Page 3813 the commission properly applied those factors in this case.
The commission found that the level of government funding criterion of the functional equivalence test had not been met. This court finds there is substantial evidence to sustain that finding, and, moreover, neither party to this proceeding contests it. Consequently, it may be adopted by this court.
As to the factor of whether or not the plaintiff performs a governmental function, the hearing officer alludes to the purposes of plaintiff's articles of incorporation stated above and added, "More specifically his found that the primary activities of the respondent have been to upgrade energy conservation and lead abatement programs, both of which activities implemented public policy initiatives of the U.S. Congress and the Connecticut General Assembly." The decision of the hearing officer went on to state, "While such social welfare programs are not universally supported as appropriate activities for government, it is beyond question as a matter of history and is found that in the period from the 1960's to the 1990's social welfare programs such as those operated by the respondent have been governmental functions. The respondent therefore performed a governmental function."
Section 19a-111a provides that the commissioner of public health shall establish a lead poisoning prevention program and may contract with individuals or groups to enter into assistance agreements with municipalities for the development and implementation of comprehensive lead poisoning prevention programs. Section 19a-111e provides that the department of public health may apply for and accept federal funds for lead poisoning prevention programs. Section 16a-40b provides the commissioner of economic and community development may make loans to residents for energy conservation and § 16a-40c authorizes the state bond commission to issue bonds to fund such loans.
Lead abatement and energy conservation may be governmental functions pursuant to those statutes. However, when such programs are conducted by an organization as a contractor rather than as governmental entity, the organization is not performing a governmental function within the meaning of § 1-200 (1). DomesticViolence Services of Greater New Haven, Inc. v. FOIC, supra, clearly states "Performing a government service pursuant to acontract does not make an entity a public agency subject to the [FOIC] act." (Underlining added). . . The key to determining CT Page 3814 whether an enity is a governmental agency or merely a contractor with the government is `whether the government is really involved in the core of the program'. Forsham v. Califano, 587 F.2d 1128,1138 (D.C. Cir. 1938,, Aff'd. 445 U.S. 169 (1980). Courts have held that entities that are the functional equivalent of a public agency have the power to govern or to regulate or to make decisions." Id. at 475. See also Envirotest Systems Corp. v.Freedom of Information Commission, Docket No. 98-0492648, Superior Court, J.D. Hartford/New Britain at New Britain (McWeeny, J., May 18, 1999.)
The plaintiff in the instant case has no power to govern, regulate or to make decisions affecting government. It operates only through contracts with the government and private concerns. Thus, this court determines the FOIC incorrectly applied the factor of performing a governmental function to the facts of this case and that factor has not been met.
As for the factor of whether or not the plaintiff was created by government, the hearing officer found that the MCAA board of directors directed its staff to form the plaintiff. MCAA board of directors initially appointed plaintiff's board of directors and MCAA provided the original seed money for plaintiff's start-up. He concluded that the plaintiff was created directly by the MCAA, itself a public agency of government. Although the plaintiff contends that the initial idea for the creation of the plaintiff came from a study group of citizens and citizen organizations, substantial evidence in the record sustains the commission's finding that the plaintiff was created by the MCAA.
As for the final factor of the extent of government involvement or regulation, the commission based its conclusion that that factor had been met in this case on the basis of the evidence that MCAA appoints a majority of the plaintiff's board (four out of seven directors), plaintiff's board cannot act unless two MCAA appointed directors are present, the executive director of MCAA serves as the chief executive officer of the plaintiff and its fiduciary agent, and all plaintiff's financial records are maintained by the staff of the MCAA and on file at the MCAA offices. Moreover, the record reveals that if at a MCAA executive committee meeting there were sufficient members of plaintiff board members present for a quorum, plaintiff simultaneously conducted its own board meeting. While the actual activity of the plaintiff performing lead abatement, weatherization and rehabilitations contracts was supervised by plaintiff's project CT Page 3815 manager in the field, by MCAA appointing the majority of plaintiff's board of directors and its executive director being the chief executive officer of the plaintiff, MCAA has not only considerable involvement with plaintiff, but actual domination and control of plaintiff.
Thus, the court concludes two factors of the functional equivalence test support the FOIC's conclusion that plaintiff is a public agency (plaintiff created by government, and considerable government involvement and control) and two factors have not been established (level of governmental funding and performance of a governmental function). The court must consider the factors "cumulatively" (Connecticut Humane Society v. Freedomof Information Commission, supra, p. 761) and weigh them on the scale of the purpose of the Freedom of Information Act "in favor of open conduct of government and free public access to government records." Wilson v. Freedom of Information Commission,181 Conn. 324, 328 (1980); Board of Trustees v. Freedom of Information Commission, 181 Conn. 544, 550 (1980).
The court gives dominant weight to the factor of MCAA having dominant control of the plaintiff by virtue of MCAA's director constituting a majority of plaintiff's board and plaintiff effectively not being able to act without MCAA board members concurrence, MCAA's executive director being the chief executive officer of plaintiff and being paid by MCAA, all plaintiff's financial records being maintained and filed with MCAA. Plaintiff, thus, is virtually an alter ego of MCAA. If the organizations were private corporations, under either the instrumentality or identity tests of Zaist v. Olson,154 Conn. 563 and Saphir v. Neustadt, 177 Conn. 191, 209-10 (1979), they could be treated as one.
MCAA was formed by an ordinance of the Meriden City Council to conduct community action programs pursuant to federal and state statutes. It was found by the FOIC to be a public agency. By plaintiff being its alter ego, the court concludes plaintiff is also a public agency within the meaning of § 1-200 (1).
The appeal is dismissed.
Robert Satter Judge Trial Referee