[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Pursuant to General Statutes §§ 10-187 and 4-183, the plaintiff, Lina Murphy, appeals from the July 8, 1999 decision of an Impartial Hearing Board of the Department of Education ("the Department") upholding the Board of Education of the town of Oxford ("Board of Education") denial of the plaintiff's request for a school accommodation under General Statutes § 10-220 (a). The plaintiff requested relocation of a school bus stop for her minor children from the corner of her street to her driveway in the town of Oxford. The Department, through its hearing officer, found that the plaintiff had not met her burden of proof of showing that the existing bus stop was hazardous or that the Board of Education did not apply its transportation policy in a reasonable manner. For the reasons set forth below, the court finds the issues in favor of the defendant.
The findings of fact of the department may be summarized as follows:
1. The plaintiff is the parent of an eight year old, third grade student and a five year old, kindergarten student.
2. The children are picked up and dropped off at a bus stop located at the corner of Silano Drive and Goffin Court in Oxford, approximately three-tenths of a mile from the plaintiff's residence.
3. Silano Drive is a suburban road with one lane of travel in each CT Page 9119 direction. It is posted with a twenty-five miles per hour speed limit. There are no paved shoulders or sidewalks; however, there are asphalt curbs and a grassy area along the side of the road from the plaintiff's home to the bus stop.
4. The transportation policy of the town of Oxford does not allow students of the plaintiff's children age to walk for more than one-half mile unless altered by the school district administration for special concerns. The parents are responsible for their children until they board the bus in the morning and immediately after they leave it on the return trip.
5. The resident state trooper conducted a study of the safety of the current bus stop and also the advisability of moving the stop closer to the plaintiff's home.
6. He concluded that "the overall traffic conditions are safe in the area of Salano (sic) Drive, but would recommend that with the volume of traffic at certain times of the day and the slight curve in the roadway between the bus stop and [the plaintiff's] residence that does limit some visibility, that the school bus stop should be moved closer to the residence."
7. While there was evidence that there is a registered sex offender living in the neighborhood, there was no evidence that there had ever been a problem nor that he lived near the route from [the plaintiff's] house to the bus stop.
8. The plaintiff was informed on January 20, 1999 that her request for a bus stop in front of her house had been denied by the Board of Education.
9. On March 8, 1999, the plaintiff requested a transportation hearing before the Board of Education.
10. On March 18, 1999, a hearing was held by the Board of Education to consider the plaintiff's request. The plaintiff was present and gave testimony.
11. The Board of Education voted to deny the plaintiff's request on March 24, 1999 and she was notified of the decision by letter dated March 25, 1999.
12. The Board of Education denied the plaintiff's request to relocate the bus stop on the grounds that the children were safe walking along the grassy area next to the roadway and that the resident trooper found that CT Page 9120 drivers generally obey the speed limit of twenty-five miles per hour. Further, the walking distance of three-tenths of a mile was found not to be excessive.
13. The plaintiff appealed from the decision of the Board of Education to the Department pursuant to General Statutes § 10-186.
(Return of Record ("ROR"), Item IV(H), pp. 3-4.)
On these facts and after a hearing, the Department concluded that the plaintiff had not proved by a preponderance of the evidence that the decision of the Board of Education was arbitrary, capricious or unreasonable and would not substitute its judgment for the Board of Education. (ROR, Item IV(H), p. 7.) This timely administrative appeal followed pursuant to General Statutes § 10-187, which provides that such appeals shall be filed in accordance with the Uniform Administrative Procedure Act, General Statutes § 4-183. The court finds that the plaintiff is statutorily aggrieved.
Just as the Department cannot substitute its judgment for that of the Board of Education, this court cannot re-try this case. See General Statutes §§ 10-186 (b)(4) and 4-183 (j). The standard of review for an administrative appeal is set forth as follows:
 The scope of permissible review is governed by § 4-183
(j) and is very restricted. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the [agency]. . . . The conclusion reached by the [agency] must be upheld if it is legally supported by the evidence. . . . The credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency, and, if there is evidence . . . which reasonably supports the decision of the commissioner, we cannot disturb the conclusion reached by him. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion.
(Citations omitted; footnote omitted; internal quotation marks omitted.) Domestic Violence Services of Greater New Haven v. FOIC,47 Conn. App. 466, 469-70 (1988).
This court may only review the conclusions of the Department, that it would not substitute its judgment for the Board of Education. FitzgeraldCT Page 9121v. State Board of Education, Superior Court, judicial district of Tolland at Rockville, Docket No. 043943 (September 12, 1990, Scheinblum, J.)("In accordance with 10-187 of those Statutes, this Court is concerned only with the actions of the State Board [of Education].") Therefore, the court looks at the record as developed at the hearing before the Board of Education and the Department to see if there is substantial evidence to support the Department's decision.
The plaintiff first claims that the Department erred by not fully relying on the statements of the resident state trooper, Jay M. Festa. As seen above, trooper Festa noted that after a month long inspection the traffic conditions were generally safe and that the twenty-five miles-per-hour speed limit was followed. He does, however, mention a curve in the road and heavier traffic occurring early in the morning and at afternoon times. He also suggests that the bus stop be moved. (ROR, Item IV(H), p. 4)[1]
On the other hand, the Department had before it, as did the Board of Education previously, the statements of Superintendent of Schools, Michael Abdalla, regarding the safety of the walk area, twenty-five photographs of the street, and the children's pathway running from their home directly to the bus stop. (ROR, Item III (B), pp. 9-11.) The statements of the bus company official indicated that visibility was not a problem. (ROR, Item III (B), p. 12.) The Department also visited the location. The record contains no report of any automobile accidents along the proposed route. Under these circumstances, there is substantial evidence in the record to support the Department's decision relying on some of the state trooper's testimony and also relying on other portions of the record as it deferred to the Board of Education's decision.
The plaintiff's second point is that as a matter of law the Department should have found the transportation policy of the Oxford Board of Education too vague and open-ended. The only case relied upon is a Hearing Board decision from the Town of Bethel where the standard was essentially "whatever street is hazardous will be dealt with appropriately." Here, the minimum walk distances are set forth for each grade level and exceptions are set forth based upon traffic conditions and safety. The court concludes that the transportation policy of the Board of Education is sufficient and the Department did not err in recognizing it. Certainly, the Board of Education's policy should not be made so stringent that individual exceptions cannot be made. (ROR, Item III (B), p. 11.)
Next, the plaintiff contests the finding made by the Department that the children's walk might take them in the path of a registered sex offender. (ROR, Item IV(H), p. 4.) Other than an incident where the CT Page 9122 offender knocked at doors in the neighborhood, there was nothing in the record to support the claim that the offender was anywhere near the children's route. (ROR, Item III (B), p. 6.) The court finds substantial evidence is found in the record to support the Department's finding of fact.
In its concluding paragraph, the Department noted that it was prepared to defer to the conclusions of the Board of Education. At the same time, the Department raised the question of whether on snowy days, the path on which the children walk might be blocked, forcing them into the street in violation of General Statutes § 14-300. This observation was not sufficient to obviate the deference the Department allowed to the Board of Education. "[R]easonable minds can certainly differ as to the safety of the walking route." (ROR, Item IV(H), p. 7.) As indicated above, this court is reviewing the decision of the Department, not the conclusions of the Board of Education. In light of the evidence in the record, including the width of the path and the traffic safety data, this court cannot find that the Department's conclusion was an "abuse of discretion" or a "clearly unwarranted exercise of discretion." General Statutes § 4-183
(j)(6); O'Connell v. FOIC, 54 Conn. App. 373, 377 (1999). Therefore, the Department's decision is affirmed and the plaintiff's appeal is hereby dismissed.
Henry S. Cohn, Judge