## ENVIROTEST SYSTEMS CORPORATION *v.* FREEDOM OF INFORMATION COMMISSION ET AL.
## (AC 19668)

Landau, Hennessy and Zarella, Js.

---

Argued June 9—officially released September 5, 2000

*Clifton A. Leonhardt,* chief counsel, with whom, on the brief, was *Mitchell W. Pearlman,* general counsel, for the appellant (named defendant).

*Jeffrey J. Mirman,* for the appellee (plaintiff).

*Opinion*

LANDAU, J. The defendant freedom of information commission (commission)[1] appeals from the judgment of the trial court sustaining the administrative appeal of the plaintiff, Envirotest Systems Corporation, from a decision by the commission ordering the disclosure of certain materials relating to state vehicle inspection

[1] The other defendant in this action is Andrew J. Simso III, whose written request to the plaintiff, Envirotest Systems Corporation, spawned the events that led to this appeal. Because only the commission has appealed from the judgment of the trial court, we refer in this opinion to the commission as the defendant.

report forms. On appeal, the commission claims that the court improperly concluded that the plaintiff is not the functional equivalent of a public agency within the meaning of General Statutes (Rev. to 1997) § 1-18a (a), now § 1-200 (1),[2] and, therefore, is not subject to the disclosure requirements of the Freedom of Information Act (act), General Statutes (Rev. to 1997) § 1-7 et seq., now § 1-200 et seq. We affirm the judgment of the trial court.

The record discloses the following factual and procedural history. The plaintiff received a letter in April, 1997, from Andrew J. Simso III, requesting copies of all records or files related to any request, requirement or advisement of changes to the state vehicle inspection report.[3] The plaintiff informed Simso that it was not a public agency and, therefore, not subject to the disclosure requirements of the act. Simso then submitted a letter to the commission, alleging that the plaintiff violated the act by failing to provide the requested information. The commission concluded that the plaintiff was the functional equivalent of a public agency within the meaning of § 1-18a (a) and as set forth in *Connecticut Humane Society* v. *Freedom of Information Com-*

[2] General Statutes (Rev. to 1997) § 1-18a (a), now § 1-200 (1), provides: " 'Public agency' or 'agency' means any executive, administrative or legislative office of the state or any political subdivision of the state and any state or town agency, any department, institution, bureau, board, commission, authority or official of the state or of any city, town, borough, municipal corporation, school district, regional district or other district or other political subdivision of the state, including any committee of, or created by, any such office, subdivision, agency, department, institution, bureau, board, commission, authority or official, and also includes any judicial office, official, or body or committee thereof but only in respect to its or their administrative functions."

[3] State of Connecticut vehicle inspection reports are generated by the department of motor vehicles (department) and contain the results of vehicle emissions tests. The form was revised in March, 1993, deleting the portions that required repairs performed after failing the test to be done using manufacturer's recommended procedures. Simso's request referred to documents concerning that change.

*mission*, 218 Conn. 757, 760, 591 A.2d 395 (1991), and, therefore, subject to the jurisdiction of the commission. The commission further concluded that the plaintiff had violated the provisions of General Statutes (Rev. to 1997) § 1-15 (a), now § 1-212 (a),[4] and ordered the plaintiff to provide the requested records.

The plaintiff appealed to the trial court, claiming that the commission incorrectly concluded that it was the functional equivalent of a public agency.[5] The court concluded that the plaintiff was not a public agency within the meaning of the statute and sustained the plaintiff's appeal. On appeal to this court, the commission claims that the trial court concluded improperly that the plaintiff is not the functional equivalent of a public agency for the purposes of the act. We disagree.

The following facts were found by the commission and are relevant to our resolution of this claim. The plaintiff was not created by government; rather, it is a for profit corporation that administers environmental programs nationwide. The plaintiff contracts with the department of motor vehicles (department) to administer the state's automobile emissions program[6] and is paid approximately $25 million by the state pursuant to the contract.

---

[4] General Statutes (Rev. to 1997) § 1-15 (a), now § 1-212 (a), provides in relevant part: "Any person applying in writing shall receive, promptly upon request, a plain or certified copy of any public record. . . ."

[5] The plaintiff's administrative appeal was brought pursuant to General Statutes § 4-166 et seq., the Uniform Administrative Procedure Act. General Statutes § 4-183 (a) provides in relevant part: "A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section. The filing of a petition for reconsideration is not a prerequisite to the filing of such an appeal."

[6] General Statutes § 14-164c (e) directs the commissioner of motor vehicles to "enter into a negotiated inspection agreement or agreements . . . with an independent contractor or contractors, to provide for the leasing, construction, equipping, maintenance or operation of a system of official emissions inspection stations . . . ."

"We review the issues raised by the [commission] in accordance with the limited scope of judicial review afforded by the [Uniform Administrative Procedure Act, General Statutes § 4-166 et seq.]. . . . The scope of permissible review is governed by [General Statutes] § 4-183 (j) and is very restricted. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the defendant. . . . The conclusion reached by the defendant must be upheld if it is legally supported by the evidence. . . . The credibility of witnesses and the determination of factual issues are matters within the province of the administrative agency, and, if there is evidence printed in the appendices to the briefs which reasonably supports the decision of the commissioner, we cannot disturb the conclusion reached by him. . . . Our ultimate duty is to determine, in view of all of the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion.

"The interpretation of statutes presents a question of law. . . . Although the factual and discretionary determinations of administrative agencies are to be given considerable weight by the courts . . . it is for the courts, and not for administrative agencies, to expound and apply governing principles of law. . . . Because the commission's determination of whether the plaintiff is a public agency required an interpretation of § 1-18a (a) [now § 1-200 (1)], that determination was a matter of law." (Citations omitted; internal quotation marks omitted.) *Domestic Violence Services of Greater New Haven, Inc.* v. *Freedom of Information Commission,* 47 Conn. App. 466, 469–71, 704 A.2d 827 (1998).

"Our Supreme Court was first asked to construe the term 'public agency' in *Board of Trustees* v. *Freedom of Information Commission,* [181 Conn. 544, 436 A.2d 266 (1980)]. In *Board of Trustees,* the court adopted the 'functional equivalent' test of the federal courts to

determine whether an entity is a public agency." *Domestic Violence Services of Greater New Haven, Inc.* v. *Freedom of Information Commission*, supra, 47 Conn. App. 473. "In determining whether an entity is the functional equivalent of a public agency, we consider the following criteria: (1) whether the entity performs a governmental function; (2) the level of government funding; (3) the extent of government involvement or regulation; and (4) whether the entity was created by the government." (Internal quotation marks omitted.) *Connecticut Humane Society* v. *Freedom of Information Commission*, supra, 218 Conn. 760. "All relevant factors are to be considered cumulatively, with no single factor being essential or conclusive." (Internal quotation marks omitted.) Id., 761.

The first prong of the functional equivalent test is whether the entity performs a governmental function. In *Domestic Violence Services of Greater New Haven, Inc.*, the plaintiff provided services to victims of domestic violence pursuant to General Statutes § 46b-38c (f), which directs local family violence units to enter into contracts with private victim service providers such as the plaintiff in that case. *Domestic Violence Services of Greater New Haven, Inc.* v. *Freedom of Information Commission*, supra, 47 Conn. App. 471–72. The court concluded that although the provision of services to victims of domestic violence was a governmental function, the plaintiff did so according to contract. Id., 474–75. "Performing a government service pursuant to contract does not make an entity a public agency subject to the act. . . . The key to determining whether an entity is a government agency or merely a contractor with the government is whether the government is really involved in the core of the program." (Citations omitted; internal quotation marks omitted.) Id.

Similarly, in this case the court found that General Statutes § 14-164c was intended to make automobile emissions inspections a governmental function. While

we agree that the plaintiff performs a governmental function in that it provides automobile emissions inspections for the public, we note that the plaintiff is not required to undertake this activity by statute. *Connecticut Humane Society* v. *Freedom of Information Commission,* supra, 218 Conn. 765. It provides this service pursuant to contract. See *Domestic Violence Services of Greater New Haven, Inc.* v. *Freedom of Information Commission,* supra, 47 Conn. App. 475. Therefore, while the plaintiff may perform a governmental function, it does so pursuant to its contractual relationship with the state and otherwise would have no obligation to provide emissions inspections.

The second prong of the functional equivalent test is concerned with the level of government funding. The commission took "administrative notice" of the Connecticut budget for 1997-1998 and found that the cost of the emissions inspection program was $25 million, the vast majority of which was paid to the plaintiff. The commission concluded, therefore, that the level of government funding was substantial. The court found that the amount of money received by the plaintiff reflects the amount of business that is done pursuant to the contract and not an allotment of government funds.[7] We agree with the court.

As previously discussed, the plaintiff in *Domestic Violence Services of Greater New Haven, Inc.,* provided services to victims of domestic violence pursuant to a contract with the state. This court concluded that "[t]he amount of government money the plaintiff receives reflects the amount of business it does with government. See *Lombardo* v. *Handler,* 397 F. Sup. 792, 796 (D.D.C. 1975), aff'd, 546 F.2d 1043 (D.C. Cir. 1976), cert.

[7] The court further noted that the administrative record before it disclosed that all money collected by the plaintiff for performing the state's emissions testing is deposited into a state fund. The plaintiff then submits a bill to the state and is paid for every emissions test performed.

denied, 431 U.S. 932, 97 S. Ct. 2639, 53 L. Ed. 2d 248 (1977). Although the plaintiff receives a significant amount of funding from various government sources, the funds are consideration for providing certain services to victims of family violence as set forth in grants and contracts." *Domestic Violence Services of Greater New Haven, Inc.* v. *Freedom of Information Commission,* supra, 47 Conn. App. 475–76. Given these circumstances, the court in *Domestic Violence Services of Greater New Haven, Inc.,* concluded that the second prong of the functional equivalent test was not met.

In this case, as in *Domestic Violence Services of Greater New Haven, Inc.,* the payment made to the plaintiff was consideration for the services it provided pursuant to a contract for the administration of the emissions inspection program. The court correctly concluded that the second prong of the functional equivalent test was not met.[8]

The third prong of the functional equivalent test evaluates the extent of government involvement or regulation. The commission concluded that because the

[8] The commission argues that the allotment of funds is more closely related to the public financing of Woodstock Academy in *Board of Trustees* v. *Freedom of Information Commission,* supra, 181 Conn. 554–55, which was held to satisfy the second prong of the functional equivalent test. In that case, the town of Woodstock paid the entire tuition fees of those pupils who resided in the town and attended the academy. Id., 547. The per pupil allotment in *Board of Trustees* and the per automobile allotment in this case, according to the commission, are functionally the same. The court, in *Board of Trustees,* found illuminating that 95.32 percent of the academy's operating expenses came from tuition payments received from the towns of Woodstock, Pomfret and Eastford. Id. The commission claims that since 100 percent of the defendant's Connecticut revenues come from the government, it should be held to receive substantial government funding. We are not persuaded.

In *Board of Trustees,* Woodstock was operating under a state constitutional mandate that a *free* public education at the secondary school level be provided to all children residing in Connecticut. Id. There is no such mandate in General Statutes § 14-164c that the emissions program be free to the public.

plaintiff maintains offices at many of the defendant's emissions stations and conducts periodic site visits at other stations to ensure compliance with state regulatory requirements, the plaintiff was subject to substantial government involvement or regulation. The court concluded that because the department did not control the day-to-day operations of the plaintiff's business, the third prong of the functional equivalent test was not satisfied. We agree with the court's determination.

In *Hallas* v. *Freedom of Information Commission*, 18 Conn. App. 291, 296, 557 A.2d 568, cert. denied, 212 Conn. 804, 561 A.2d 945 (1989), this court held that to satisfy the regulation prong of the test, the entity must "operate under direct, pervasive or continuous regulatory control . . . ." Also critical in the determination of whether an entity is a governmental agency is the amount of control the government exercises over the entity's detailed physical performance. *Domestic Violence Services of Greater New Haven, Inc.* v. *Freedom of Information Commission*, supra, 47 Conn. App. 478. In *Forsham* v. *Harris*, 445 U.S. 169, 100 S. Ct. 977, 63 L. Ed. 2d 293 (1980), the United States Supreme Court addressed whether the acts of a private entity that received grants of federal funds became governmental acts subjecting that entity to the federal Freedom of Information Act (FOIA), 5 U.S.C. § 552. The court held that "absent extensive, detailed, and virtually day-to-day supervision," the entity was not a "federal instrumentality or an FOIA agency." Id., 180.

The record does not indicate that the department exerts direct, pervasive or continuous regulatory control over the plaintiff's business. The plaintiff is a private corporation doing business nationwide, and its employees are not government employees. The department maintains offices at many of the defendant's emissions stations and conducts periodic site visits to evaluate rather than control the plaintiff's activity. See *Domestic*

*Violence Services of Greater New Haven, Inc.* v. *Freedom of Information Commission,* supra, 47 Conn. App. 477. Because the government does not control the day-to-day activity of the plaintiff's business, the third prong of the functional equivalent test is not met.

The parties agree that because the plaintiff was not created by government, the fourth prong of the functional equivalent test also is not met. Our review of the record leads us to conclude that the court properly determined that the plaintiff is not the functional equivalent of a public agency and that the court therefore correctly sustained the plaintiff's appeal.[9]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[9] The commission argues additionally that *Cos Cob Volunteer Fire Co. No. 1, Inc.* v. *Freedom of Information Commission,* 212 Conn. 100, 561 A.2d 429 (1989), allows this court to find the plaintiff to be the functional equivalent of a public agency for actions taken in the performance of its government services, but not those activities unrelated to government. We reject this argument. In *Cos Cob Volunteer Fire Co. No. 1, Inc.,* unlike in this case, the volunteer fire department was found to be a public agency under General Statutes § 1-18a (a). The court held that a statute that exempted "operational" meetings of volunteer fire departments from the act's requirement that they be open to the public did not apply to the "nonoperational" portions of the meetings. Id., 105–106. We, however, have determined that the plaintiff here is not a public agency or its functional equivalent, nor is there a statute at issue such as the one in *Cos Cob Volunteer Fire Co. No. 1, Inc.*. Therefore we need not address the question of whether some of the plaintiff's activities can be subject to the act.