[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an administrative appeal by the Town of Manchester ("the town") from a January 19, 2000 final decision of the Department of Public Utility Control ("DPUC") approving the town's use of a space for fiber-optic cable on telephone poles located in the town (the "municipal gain"), but requiring the town to pay to the defendants Southern New England Telephone Company ("SNET") and Connecticut Light and Power Company ("CLP") a charge for making their equipment ready. The town appeals only from that portion of the decision requiring it to pay "make ready" charges to SNET and CLP.
The record discloses that SNET requested a declaratory ruling from the DPUC on March 11, 1999, that the use of the municipal gain on telephone poles and in conduits is limited to fire and traffic signaling pursuant to General Statutes § 16-233. SNET alleged that the town attached fiber-optic cable in the municipal gain on poles for a purpose other than fire and traffic signaling and that such attachment was not permissible. (Return of Record ("ROR"), Item XII-2, p. 2.)
After hearings and other procedures, the DPUC issued its final decision. The findings of fact were as follows:
 1. Manchester's pilot project is comprised of two fiber-optic cable links from Lincoln Center to the Bennet Middle School and from Lincoln Center to the Eighth Utilities District firehouse, and have been in operation since November 1998 and August 1999, respectively.
 2. Manchester's pilot project is comprised of approximately 13,000 feet of fiber optic cable and encompasses 109 utility poles in Manchester.
 3. The pilot project integrates voice, video, and data traffic between and among all municipal and public school facilities in Manchester. CT Page 6114
 4. Manchester's facilities are not intended to provide telecommunications services for public hire as a common carrier.
 5. The 40 inches of power safety zone is designed to provide adequate workspace clearance for utility employees that are working on the pole, separating electric power lines and communications lines.
 6. Municipal gain is the space designated for municipal attachments positioned in accordance with applicable safety standards in the communication gain, typically positioned at the top of communications lines.
 7. Manchester's installation of its fiber-optic facilities[1] is not in compliance with NESC and industry standards.
 8. The corrective date concerning Manchester's fiber optic facilities has been extended to January 30, 2000.
 9. Pole make ready procedures ensure space is available, poles can physically accommodate new facilities, and the integrity of the pole structure.
(ROR, Item XII-2, p. 13.)
Based upon these findings of fact the DPUC concluded that the town had the legal authority to place its fiber optic cable on utility poles within its borders. It also concluded that the term "signal wires" in § 16-233 was not limited to traffic and fire wires, and that the town's project was being used for internal purposes and therefore was a "private telecommunications service." (ROR, Item XII-2, p. 13.) At the same time the DPUC decided that the town, "like any other CATV or certified telecommunications provider, should be subject to pole make ready costs for its private telecommunications project." (ROR, Item XII-2, p. 14.)
On March 3, 2000, the town appealed from this decision only to contest the make ready costs portion of the ruling.[2] SNET also purported to appeal from the DPUC's decision that the town had the authority to place its fiber optic cable on the utility poles. This appeal was dismissed as late, however. CT Page 6115
The town's appeal is first attacked on jurisdictional grounds. When its appeal was taken, it employed an indifferent person to make service who left copies with the DPUC and the other parties on March 3, 2000. The town's petition for an administrative appeal was filed with the Superior Court on March 3, 2000. Neither in the citation nor in the caption of the petition is the DPUC listed as a party. The DPUC was listed as a party in the body of the petition at paragraph 8. The town on April 20, 2000, amended the citation to include the DPUC. On May 4, 2000, the DPUC moved to intervene. At a hearing held by this court on June 6, 2000, this court denied a motion to dismiss based on the original defective citation. DPUC and other parties defendant have renewed this motion at the hearing on the merits.
The court has reconsidered the issue and has decided not to change its previous ruling. Suffice it to say, to quote Glastonbury VolunteerAmbulance Assn., Inc. v. FOIC, 227 Conn. 848, 856 (1993):
 If there is no service at all on the agency within the forty-five day period, the court lacks subject matter jurisdiction over the appeal by the clear implication of the language in § 4-183(c), read against the background of the preexisting law . . . If there is merely an arguable defect in the process timely served on the agency, however, the court does not lack subject matter jurisdiction over the appeal. Under those circumstances, § 4-183(d) applies, and the appeal is dismissable only upon a finding of prejudice to the agency. . . .
(Citations omitted; internal quotation marks omitted.)
The court also concludes that even if it does have jurisdiction in this matter, the plaintiff's case is without merit.[3] The court must decide this appeal under the following standard:
 The standard of review of an agency decision is well established. Ordinarily, this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's purposes. . . . [A]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the CT Page 6116 agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . [I]t is for the courts, and not administrative agencies, to expound and apply governing principles of law. . . .
(Citations omitted.) Office of Consumer Counsel v. DPUC, 252 Conn. 115,120 (2000).
The town first argues that in ordering the town to pay the make ready costs, the DPUC exceeded its statutory authority. The municipal gain statute, § 16-233, provides in pertinent part as follows:
 Each town . . . shall have the right to occupy and use for municipal and state signal wires, without payment therefor, one gain upon each public utility pole . . . within the limits of any such town. . . . The location or relocation of any such gain shall be prescribed by the Department of Public Utility Control. Any such gain shall be reserved for use by the town. . . .
The statute specifically states that the municipal gain shall be "without payment." From this, the town argues that the DPUC had no justification to enter the payment order and it improperly "immersed itself in the legislative function." (Memorandum of Law in Support of the Town of Manchester's Appeal, p. 5.)
The town overlooks the broad discretion vested in the DPUC to regulate transmission lines (obviously the pole does not contain only telecommunication equipment; it contains high voltage electrical lines as well). As § 16-243 provides:
 The Department of Public Utility Control shall have exclusive jurisdiction and direction over the method of construction or reconstruction in whole or in part of each system used for the transmission or distribution of electricity, with the kind, quality and finish of all materials, wires, poles, conductors and fixtures . . . and the method of their use. . . . The department may make any order necessary to the exercise of such power and direction. . . .
This provision allowing for orders certainly has to be read in concert with the provision relating to municipal gain. State v. State Employees'Review Board, 239 Conn. 638, 654 (1997); Platcow v. Yasuda Fire MarineIns. Co. of America, 59 Conn. App. 47, 56 (2000) ("We are guided by the CT Page 6117 principle that the legislature is always presumed to have created a harmonious and consistent body of law.")
In addition the DPUC has been given broad powers to insure safety of the public and the employees of public service companies. General Statutes §§ 16-11, 16-12. There is a legislative directive that the DPUC regulate all activities related to public utilities to the fullest extent. Greenwich v. Department of Public Utility Control, 219 Conn. 121,126 (1991). This grant from the General Assembly gives the DPUC sufficient regulatory authority to impose the make ready charges on the town.
The second issue raised by the town arises from its citation to the municipal gain statute; it is claimed that the town is permitted to "occupy" the gain "without payment therefor." Since "occupy" means "to take hold of," the town argues that the installation of their fiber optic system should be free of charge.
Here the town has the burden not only to show that the statute was interpreted wrongly, but that the DPUC applied it incorrectly. The standard for review in such an instance is highly deferential to the agency. Domestic Violence Services of Greater New Haven, Inc. v. FOIC,47 Conn. App. 466, 469-70 (1998). The final decision contains numerous references, supported by the record, that the town in first instituting the fiber optic system without the assistance of SNET and CLP created a hazardous situation.
 Throughout the course of this proceeding there were a number of construction and safety violations that were presented by SNET and CLP involving Manchester's fiber optic facilities. Both SNET and CLP witnesses testified that they discovered 53% of the 109 poles used by Manchester created safety clearance violations. Tr. 10/27/99, pp. 240, 299. Specifically, the witnesses claimed Manchester's fiber optic cable was too close to the secondary power line, resulting in a failure to allow for the 40-inch separation for power's safety neutral zone. Other violations raised by SNET and CLP included inadequate separations of 12 inches between communication lines, improper bonding and grounding and additional safety hazards. Tr. 09/29/99, p. 57, Tr. 10/27/99, p. 236. SNET submitted numerous photographs of the poles identifying the types of violations that were located on School Street and Spruce Street in Manchester. Late Filed Exhibit No. 2, Attachment A.
CT Page 6118
(ROR, Item XII-2, p. 9.)
The decision also refers to the failure of the town to have a certified telecommunications contractor involved in its pilot project for maintenance and repair. It had selected a company for installation that had violated safety codes. (ROR, Item XII-2, pp. 11-12.)
The town argues that SNET and CLP are at fault for the companies failed to leave a space for the municipal gain on certain poles. This is said to have interfered with the town's installation process and may have led to the infringement on the electrical lines noted by the DPUC. The answer to this is that § 16-233 was amended in 1994 to specifically require the reservation of a space on the pole for the municipal gain. Public Act 1994, No. 94-188, § 14. The 109 poles in the town at issue here were all put in use before 1994, so there was no duty on the companies to leave a space for the gain, unless asked by the town.
The court concludes that the DPUC correctly applied the facts to the law in determining that the right of the town to "occupy" the gain should also require the payment of costs to correct the initial efforts by the town to install their fiber optic system and otherwise prepare the poles. The appeal is therefore dismissed.
Henry S. Cohn, Judge